423 So.2d 1303 (1982)
Leonard MYRES
v.
ORLEANS PARISH SCHOOL BOARD.
No. 13291.
Court of Appeal of Louisiana, Fourth Circuit.
December 1, 1982.
Rehearing Denied January 14, 1983.
Leonard S. Myres, in pro per.
Charles T. Williams, New Orleans, for plaintiff-appellant.
Franklin V. Endom, Jr., New Orleans, for defendant-appellee.
Before GULOTTA, WARD and CIACCIO, JJ.
WARD, Judge.
Leonard Myres is a school teacher who was employed by the Orleans Parish School Board until his dismissal during his first year of employment as a classroom instructor. Myres brought suit in Orleans Parish Civil District Court, seeking damages for breach of his employment contract and reinstatement with back pay, alleging that he was wrongfully discharged. After trial on the merits, the Trial Judge rendered judgment in favor of the defendant, Orleans Parish School Board. Myres appeals, contending that the Trial Judge erred in finding that the School Board acted within its discretion and that they relied on valid reasons for his discharge. We affirm the judgment of the Trial Court.
On April 6, 1981, after less than one year as a probationary teacher, Myres was discharged *1304 pursuant to the authority granted to the Orleans Parish School Board in LSA-R.S. 17:461 which provides:
All teachers shall serve a probationary term of three years reckoned from the date of appointment in the parish of Orleans, during which term the Orleans Parish school board may dismiss or discharge any such probationary teacher upon the recommendation of the superintendent of public schools for the Parish of Orleans, accompanied by the written reasons therefor.
Myres' discharge arose from an incident which occurred on February 2, 1981. Myres observed two students, a girl and a boy, fighting in the hallway of Cohen High School where Myres was assigned. The girl fled but Myres grabbed the boy and attempted to escort him to the principal's office for discipline. Carl Brown, another male student, interfered, breaking Myres' hold on the boy and allowing him to run from the building. Myres chased the boy without success and then returned to confront Carl Brown. Upon being questioned by Myres, Brown and a group of twelve to fifteen male students who had gathered became hostile. Myres described the incident that followed in his testimony at trial:
Well, what happened was, that when I told Carl Brown that I was going to take him to the office, he assumed the position that I was not going to take him to the office. So whatwhat happened was that I realized that I was in a situation where it was either going to beI was going to either have to fight or something or grab him or something. So I realized that I had a starter pistol in my back pocket. So he was standing around with a group of his young friends blocking the door. So what I did, as I went to my back pocket, I pulled it out. I banished [sic] it like this (indicating). I froze everybody that was standing there. And when I froze them, then, I put it back in my pocket. And I escorted Carl Brown to the office.
Shortly after the incident, the principal of Cohen High School conducted an investigation, and in a report to the District Superintendent, the principal gave his conclusions:
1. Mr. Myres' action in attempting to stop disruption is commendable.
2. Mr. Myres' decision to be in possession of a gun on our campus is repugnant and unnecessary.
3. Mr. Myres' decision to use a gun in handling students is unpardonable and indicative of very poor judgment in a crisis, which could have resulted in disastrous consequences to himself, students, and the School District....
Consequently, the District Superintendent held a hearing which was attended by Myres, and after the hearing, the District Supervisor wrote a letter to the Superintendent for Human Resources Management, recommending Myres' discharge.
Another administrative hearing was held by the Assistant Superintendent for Human Resources who recommended the dismissal of Myres. The Superintendent of the Schools concurred, and his recommendation was forwarded to the School Board:
Mr. Myres' termination is being recommended because he demonstrated his incompetence and a gross lack of good judgment on February 2, 1981, while employed as a teacher at Walter L. Cohen Senior High School. On that day, Mr. Myres brandished a pistol to quell a confrontation he was then having with several students in the school building.
The foregoing recommendation has been preceded by a thorough investigation into the matter by the school principal, a conference before the District Superintendent and an administrative hearing before the Superintendent's designee on March 5, 1981.
The School Board accepted the recommendation and, at its April 6, 1981, meeting, voted to discharge Myres.
The procedure through which Myres was discharged goes beyond that prescribed by LSA-R.S. 17:461, supra, for termination of non-tenured teachers and far beyond what has been required by the courts. It has often been held that a probationary teacher *1305 is not entitled to notice or hearing prior to termination. See Booker v. Richland Parish School Board, 393 So.2d 785 (La.App. 2d Cir.1981); Hayward v. Rapides Parish School Board, 374 So.2d 1281 (La.App. 3d Cir.1979) writ denied 376 So.2d 1267 (La. 1979); Foreman v. Vermillion Parish School Board, 353 So.2d 471 (La.App. 3d Cir.1977) writ denied 355 So.2d 257 (La.1978); Castille v. Evangeline Parish School Board, 304 So.2d 701 (La.App. 3d Cir.1974), writ denied 309 So.2d 342 (La.1975).
LSA-R.S. 17:461 gives the School Board discretion to dismiss a teacher upon recommendation of the Superintendent, accompanied by written reasons. This statute reflects a legislative intent to provide a large measure of discretion to the School Board in the discharge of a probationary employee. Moreover, as the First Circuit Court of Appeal observed in Chantlin v. Acadia Parish School Board, 100 So.2d 908 (La.App. 1st Cir.1958), the administration of the school system is entrusted by the constitution and the legislature to the parish school boards and not to the courts.
Nonetheless, we believe that due process requires judicial review to insure that the great discretion given to the School Board is not abused. But that review is limited, and where there is a rational basis, which is supported by substantial evidence, for the School Board's discretionary determination, the courts cannot and should not substitute their judgment for that of the School Board. Chantlin v. Acadia Parish School Board, supra; Celestine v. Lafayette Parish School Board, 284 So.2d 650 (La.App. 3d Cir.1973).
Further, we believe that after a judicial determination in the Trial Court, the scope of appellate review is limited to the question of whether the Trial Judge's determination is manifestly erroneous. Is it supported by the record?
In this case, the evidence introduced in trial supports the Trial Judge's determination that the School Board did not abuse its discretion. Myres admitted that he brandished a starter pistol in an attempt to gain control of a group of hostile students. The superintendent recommended Myres' discharge because, like the principal and the supervisor, he considered Myres' display of the gun indicative of poor judgment in a crisis. The purpose of granting the school board discretion in the dismissal of probationary employees is to allow the board to terminate the employment of personnel whose conduct indicates that they are not well-suited for handling the pressures or responsibilities encountered by an educator.
In conclusion, the District Court found that the School Board did not abuse its discretion, and we believe, as the Trial Judge believed, that there was substantial evidence supporting a rational basis for the decision to terminate a probationary teacher.
For the foregoing reasons, we affirm the judgment of the District Court. All cost of trial and the appeal are to be paid by Leonard Myres.