541 So.2d 955 (1989)
Rosemary FORD, Plaintiff/Appellant,
v.
CALDWELL PARISH SCHOOL BOARD, et al., Defendants/Appellees.
No. 20351-CA.
Court of Appeal of Louisiana, Second Circuit.
March 29, 1989.
*956 Minard & Mixon by Cameron Minard, Columbia, for plaintiff/appellant.
Don C. Burns, Dist. Atty., Iley H. Evans, Asst. Dist. Atty., Columbia, Theus, Grisham, Davis & Leigh by James M. Edwards, Monroe, for defendants/appellees.
Before HALL, C.J., and MARVIN and LINDSAY, JJ.
HALL, Chief Judge.
Plaintiff, Rosemary Ford, filed suit against the Caldwell Parish School Board, several members of the board who voted in favor of her dismissal, the principal of the elementary school at which she taught, and an elementary school supervisor, alleging she had been wrongfully discharged as a non-tenured probationary teacher and seeking reinstatement to her position with salary and damages. She was discharged by the board after a hearing pursuant to the written recommendation of the superintendent accompanied by reasons. Her dismissal arose out of a conflict with supervisory personnel over her organization of a class for preschool age children to which she was assigned after being employed at the beginning of the school year.
The school board's liability insurer was subsequently added as a defendant. Plaintiff later moved for a trial by jury and sought to take the depositions of the principal and the supervisor.
After various interlocutory proceedings, the district court ultimately ruled that plaintiff was entitled only to limited judicial review of her discharge by the school board and that the review would be limited to an examination of the transcript of the due process hearing held by the school board prior to her dismissal. Plaintiff's motion for jury trial was denied and she was not allowed to take depositions. After review of the hearing transcript the district court upheld the actions of the school board and dismissed plaintiff's suit as to all defendants.
*957 Plaintiff appealed. Her complaints on appeal can be summarized as follows:
(1) the trial court erred in limiting it's review of the school board action to a review of the transcript of the unsworn testimony taken at the due process hearing held by the school board; the court should have held a trial to give plaintiff the opportunity to prove her allegations that the charges against her were unfounded and to prove that the hearing was unfair because the principal and supervisor contacted the school board members prior to the hearing and got their commitment to fire plaintiff;
(2) the trial court erred in denying plaintiff a jury trial as to the individual defendants other than the school board;
(3) the trial court erred in not allowing plaintiff to take the discovery depositions of the principal and supervisor.
We first consider the nature of plaintiff's suit. All relief sought by plaintiff stems from her claim of wrongful discharge by the school board in violation of the teacher tenure law, LSA-R.S. 17:441 et seq. If her dismissal was lawful and in accordance with the teacher tenure law then she is entitled to none of the relief she seeks against any of the defendants.
Thus, the essence of the suit is judicial review of the action of the school board. A jury trial of a suit against the school board is prohibited by LSA-R.S. 13:5105. By naming the school board members, school officials, and the school board's liability insurer as defendants, plaintiff cannot change the character of her action, or at least the threshold issue in her action, from a suit seeking judicial review of her discharge by the school board under the teacher tenure law, for which a jury trial is not available, to some form of action for which a jury trial is available. See Anderson v. St. Bernard Parish, 503 So. 2d 549 (La.App. 4th Cir.1987). The district court did not err in striking plaintiff's request for a jury trial in this action for judicial review of the school board's decision to discharge her.
We next consider the extent and scope of judicial review of the discharge of a probationary teacher by the school board, and whether plaintiff was entitled to a trial de novo or to present additional evidence in the district court.
Discharge of probationary teachers is governed by LSA-R.S. 17:442 which provides in pertinent part:
"Each teacher shall serve a probationary term of three years to be reckoned from the date of his first appointment in the parish or city in which the teacher is serving his probation. During the probationary term the parish or city school board, as the case may be, may dismiss or discharge any probationary teacher upon the written recommendation of the parish or city superintendent of schools, as the case may be, accompanied by valid reasons therefor.
Unlike the provisions of LSA-R.S. 17:443[1] governing the discharge of tenured *958 teachers, section 442 does not require specific enumerated grounds for discharge, a hearing by the school board prior to discharge, or judicial review of the school board action. Section 442 provides only that the school board may discharge any probationary teacher upon written recommendation of the superintendent accompanied by valid reasons therefor. A school board may discharge or decline to renew the contract of a probationary teacher without notice or a hearing. Foreman v. Vermillion Parish School Board, 353 So.2d 471 (La.App. 3d Cir.1977), writ denied 355 So.2d 257 (La.1978); Castille v. Evangeline Parish School Board, 304 So.2d 701 (La. App. 3d Cir.1974), writ denied 309 So.2d 342 (La.1975); Booker v. Richland Parish School Board, 393 So.2d 785 (La.App. 2d Cir.1981); Hayward v. Rapides Parish School Board, 374 So.2d 1281 (La.App. 3d Cir.1979), writ denied 376 So.2d 1267 (La. 1979).
Although the statute does not provide for judicial review, it has been held that judicial review of the discharge of a probationary teacher is available to assure that the school board did not abuse its discretion. Myres v. Orleans Parish School Board, 423 So.2d 1303 (La.App. 4th Cir. 1982), writ denied 430 So.2d 657 (La.1983). The cases also indicate that "valid reasons" for discharge must, in fact, exist. See Dean v. Tensas Parish School Board, 505 So.2d 908, 912 (La.App. 2d Cir.1987), writ denied 508 So.2d 826 (La.1987); Hayward v. Rapides Parish School Board, supra.
In the case of tenured teachers, judicial review does not require a trial de novo but the teacher may offer evidence which does not duplicate that presented at the school board hearing. Lewis v. East Feliciana Parish School Board, 372 So.2d 649 (La.App. 1st Cir.1979), writ denied 375 So.2d 959 (La.1979); and 452 So.2d 1275 (La.App. 1st Cir.1984), writ denied 458 So. 2d 123 (La.1984). A non-tenured teacher discharged after a school board hearing should not be afforded greater rights of judicial review than a tenured teacher. Where, as here, the probationary teacher is afforded a full scale hearing at which all parties in interest are heard, including the teacher, it is not error for the district court to limit its review to an examination of the transcript of the hearing, unless there is a showing of a need for additional evidence.
Plaintiff's allegations and contentions in this case do not demonstrate a need for additional evidence. She has not alleged or argued at any stage of these proceedings that there exists any additional evidence as to the circumstances giving rise to the stated reasons for her discharge. She was allowed to give her version of the events at length and in detail at the school board hearing. She was given ample notice of the hearing, was represented by counsel at the hearing, and made no request that the witnesses be placed under oath. Her quarrel does not seem to be with the facts, but with whether her actions were justified and whether those actions constituted valid reasons for her discharge. Under the circumstances of this case, the district court did not abuse its discretion in limiting review to the transcript of the school board hearing.
After ruling that review would be limited to examination of the transcript of the hearing and that additional evidence would not be allowed, the district court did not err *959 in refusing to allow plaintiff to take discovery depositions of potential witnesses.
In determining whether there were valid reasons for discharge, the role of the reviewing court is to determine whether the great discretion of the school board was abused. Where there is a rational basis, supported by substantial evidence, for the school board's discretionary determination, the courts cannot and should not substitute their judgment for that of the school board. Myres v. Orleans Parish School Board, supra. The reasons for dismissal of a probationary teacher are committed to the sound discretion of the school board, and unless the teacher can clearly show the board abused its discretion, the court will not interfere. State, ex rel Piper v. East Baton Rouge Parish School Board, 213 La. 885, 35 So.2d 804 (1948); Noel v. Andrus, 810 F.2d 1388 (5th Cir. 1987). When the legislature provided that a probationary teacher can be discharged simply for "valid reasons", in contradistinction to the specified grounds of discharge in the case of tenured teachers, the legislative intent was to provide a large measure of discretion to school boards in the discharge of such probationary teachers. Although the school board is not authorized to discharge a probationary teacher without any cause at all, State, ex rel Nobles v. Bienville Parish School Board, 200 La. 983, 9 So.2d 310 (1942), the discretion given to the school board in discharging, for valid reasons, teachers during their probationary terms is for the purpose of weeding out personnel whose attitude or performance, while perhaps not so flagrantly faulty as might be required for the discharge of a tenured teacher, indicates that it is undesirable for reasons of efficiency or harmony, among others, to grant them permanent status as members of our professional educational force. The term "valid reasons" means "sound and sufficient reasons." Chantlin v. Acadia Parish School Board, 100 So.2d 908 (La.App. 1st Cir.1958).
The reasons for recommending dismissal given by the superintendent in the notice to plaintiff were:
(1) Willful neglect of duty by leaving your job without authorization on September 17, 1985;
(2) insubordination to principal, supervisor and superintendent by telling some parents not to send their children to school when all three administrators had directed you that all children in the preschool class were to attend school every day; and
(3) by abruptly leaving the office when problems were being discussed with principal and superintendent.
These reasons were detailed in a letter to the school board from the superintendent recommending dismissal as follows:
"On Tuesday, September 17, 1985, Mrs. Rosemary Ford left her job without authorization. As she was leaving school she told the principal she was going to see the superintendent. It was not an emergency situation. I was at lunch and did not see Mrs. Ford.
On Wednesday, September 18, 1985, I went to Central Elementary School to talk to Mrs. Ford concerning her telling parents not to send their children to school for the rest of the week. She stated that she had recommended to several parents that they not send their children to school for the rest of the week. Mrs. Ford had been told by Mrs. Clarice Kenney, Elementary Supervisor, and Mrs. Valda Parker, Central Elementary School Principal, that all children in the pre-school class were to attend school every day. A retired teacher, Mrs. Sybil Feeney, had been hired on a temporary basis to help Mrs. Ford and her aide until the children adjusted.
I told Mrs. Ford I wanted her to contact the parents she had talked to and to tell them to send their children to school every day. I told her that if we could not settle this matter, she would be taken before the school board. Mrs. Ford shrugged her shoulders.
At this point Mrs. Ford put a schedule on the desk in front of me which showed the children attending her class every other day until October 4, 1985. Mrs. Ford stated that she was sending the schedule *960 home with the children that afternoon. I told Mrs. Ford again that the children were to come to school every day. Mrs. Ford stood up and stated that she had nothing else to say concerning the matter and left the office.
Based on the reasons stated above it is my recommendation that Mrs. Rosemary Ford be dismissed as an employee of the Caldwell Parish School Board."
The transcript of the school board hearing reveals the following facts. Rosemary Ford was employed by the Caldwell Parish School Board as a teacher in the school system during the 1985-86 term. She accepted an assignment to set up a new pilot program for preschool children, ages 3 to 5, who came from underprivileged homes. After a short delay due to funding and organizational problems, Mrs. Ford was able to start the program with 20 eligible children whom she had screened for the program.
A disagreement arose as to the attendance requirements of the preschoolers with Mrs. Ford maintaining the children should come to school every other day to reduce the emotional trauma experienced by them on their first days of school. The principal and elementary supervisor insisted the children attend school every day. Mrs. Ford was provided with a teaching aide but maintained the 20 member class should be divided with 10 students coming on one day and the other 10 the following day. Mrs. Ford proposed that this schedule be followed at least the first week so that the children could become accustomed to their new environment with a minimum amount of stress.
On the first day of school 19 children arrived and Mrs. Ford and her aide began experiencing difficulties in controlling the three and four year old children. By mid-morning an additional aide had been assigned to the class to help Mrs. Ford. At the noon hour Mrs. Ford left her children with the two aides and told the principal, Mrs. Parker, that she was going to see Mr. Turner, the superintendent of schools. Mrs. Ford informed the principal that if she wanted just a babysitter that she needed to hire one. Ford then left the school and went to the school board office which was closed. She stopped by the local high school where her husband worked as an assistant coach to discuss the problem with him. She returned to the elementary school having been gone approximately 25 minutes. During this time the children were in the lunchroom, being attended by the two aides and the principal, Mrs. Parker. When Mrs. Ford returned, Mrs. Parker and Ms. Kenney met with Mrs. Ford and admonished her for her lack of cooperation and for leaving her assigned duties without permission.
The following day Mrs. Ford, Mrs. Parker, and Mr. Turner met to discuss the attendance procedure of the new program. Turner and Parker maintained that daily attendance was required and Mrs. Ford advised them she had already prepared a staggered schedule for the remainder of the week and that she was sending it home with the children. She did in fact send the recommended schedule home with her children that day. The following day only 11 children attended the class and Mrs. Ford was of the opinion that things went well with the class that day. The next day Mrs. Ford received a letter from the superintendent, Mr. Turner, charging her with willful neglect and insubordination. The letter informed her there would be a "due process hearing" concerning her employment. Mrs. Ford's performance between the time she was given notice and the school board hearing was satisfactory.
The evidence presented at the school board hearing supports the reasons for dismissal given by the superintendent, which reasons constitute a rational basis for the board's action. Although surely well intentioned, plaintiff persisted in establishing a staggered attendance schedule for her students contrary to the explicit directions of the principal, supervisor, and superintendent. She left her class and the school without permission to go see the superintendent. She abruptly left a meeting with the principal and the superintendent. While her actions did not approach the type conduct which constitutes grounds for dismissing *961 a tenured teacher, it nevertheless indicated an uncooperative attitude which posed a problem in her working relationship with her supervisors and interfered with the management of her class in accordance with policies set by the supervisory personnel. There was a rational basis for the school board action and the board did not clearly abuse its discretion.
Plaintiff's dismissal as a probationary teacher by the school board was in accordance with the teacher tenure law. She has been afforded adequate judicial review of the actions of the school board. She is not entitled to the relief she seeks against any of the defendants and, accordingly, the judgment of the district court dismissing her action against all defendants is correct and is affirmed at plaintiff-appellant's cost.
Affirmed.
NOTES
[1] LSA-R.S. 17:443:

A. A permanent teacher shall not be removed from office except upon written and signed charges of willful neglect of duty, or incompetency or dishonesty, or of being a member of or contributing to any group, organization, movement or corporation that is by law or injunction prohibited from operating in the state of Louisiana, and then only if found guilty after a hearing by the school board of the parish or city, as the case may be, which hearing may be private or public, at the option of the teacher. At least twenty days in advance of the date of the hearing, the superintendent with approval of the school board shall furnish the teacher with a copy of the written charges. Such statement of charges shall include a complete and detailed list of the specific reasons for such charges and shall include but not be limited to the following: date and place of alleged offense or offenses, names of individuals involved in or witnessing such offense or offenses, names of witnesses called or to be called to testify against the teacher at said hearing, and whether or not any such charges previously have been brought against the teacher. The teacher shall have the right to appear before the board with witnesses in his behalf and with counsel of his selection, all of whom shall be heard by the board at said hearing. For the purpose of conducting hearings hereunder the board shall have the power to issue subpoenas to compel the attendance of all witnesses on behalf of the teacher. Nothing herein contained shall impair the right of appeal to a court of competent jurisdiction.
B. If a permanent teacher is found guilty by a school board, after due and legal hearing as provided herein, on charges of willful neglect of duty, or of incompetency, or dishonesty, or of being a member of or contributing to any group, organization, movement or corporation that is by law or injunction prohibited from operating in the state of Louisiana, and ordered removed from office, or disciplined by the board, the superintendent with approval of the board shall furnish to the teacher a written statement of recommendation of removal or discipline, which shall include but not be limited to the exact reason(s), offense(s) or instance(s) upon which the recommendation is based. Such teacher may, not more than one year from the date of the said finding, petition a court of competent jurisdiction for a full hearing to review the action of the school board, and the court shall have jurisdiction to affirm or reverse the action of the school board in the matter. If the finding of the school board is reversed by the court and the teacher is ordered reinstated and restored to duty, the teacher shall be entitled to full pay for any loss of time or salary he or she may have sustained by reason of the action of the said school board.