MARC E. JOHNSON, Judge.
| gIn this wrongful termination lawsuit, both the employer and the employee appeal the judgment of the trial court, which reinstated the employee to his job as a teacher and awarded him damages. For the following reasons, we affirm in part and amend in part.

FACTS & PROCEDURAL HISTORY

In 2011, Plaintiff, Steve Barton, was initially hired to work part-time as a high school football coach and was subsequently hired as a full-time itinerant physical education (“P.E.”) teacher for the Jefferson Parish Public School System (“JPPSS”). For the 2011-2012 school year, Mr. Barton was assigned to Geraldine Boudreaux Ele *319 mentary School as a P.E. teacher for pre-K through fourth grade.
|sOn January 24, 2012, Mr. Barton had his third grade class playing dodgeball when he was involved in an incident with one of his students, KeShawn Butler. It is undisputed that KeShawn either kicked or threw a safety cone that struck Mr. Barton in the head, after which Mr. Barton grabbed KeShawn’s shirt and instructed KeShawn to sit down. KeShawn sat down for the remainder of the class period.
Immediately thereafter, KeShawn reported the incident to the principal, Kiplyn Diaz-Pereira, claiming Mr. Barton “[p]ut his hands on me grabed [sic] me hit me in my head cursed me out. [T]alking about me. [CJalling me stuiped [sic].” Ms. Diaz-Pereira further discussed the matter with KeShawn and ascertained that the class was playing dodgeball when the ball became stuck in a tree and Mr. Barton instructed the students to get in then-spots. KeShawn stated that as he was running to his spot, he accidentally kicked a cone and it hit Mr. Barton. KeShawn claimed that Mr. Barton had two balls in his hands, which he tried to throw at KeShawn. That afternoon, Mr. Barton was called into Ms. Diaz-Pereira’s office and asked to write a statement about the incident. Mr. Barton indicated that KeSh-awn was throwing cones at others in P.E. class and that he placed his hands on KeShawn’s chest to stop him from hitting the other students. The next day, Ms. Diaz-Pereira asked all the students in the class to write down what happened in P.E. class the day before.
Based on her investigation, Ms. Diaz-Pereira believed Mr. Barton had acted inappropriately, and on January 30, 2012, she advised Mr. Barton that he was being suspended without pay, effective January 31, 2012, for impermissible corporal punishment until due process procedures were held. Thereafter, on February 29, 2012, Ms. Diaz-Pereira recommended that Mr. Barton be terminated from his employment with the JPPSS, a recommendation supported by the acting chief human capital officer on March 22, 2012 and the acting superintendent for |4JPPSS on May 2, 2012. The Jefferson Parish School Board upheld the recommendations for Mr. Barton’s termination on November 5, 2013.
As a result of his termination, Mr. Barton filed the present lawsuit against the Jefferson Parish School Board (“School Board”) and Kiplyn Diaz-Pereira seeking damages on the basis he was wrongfully terminated.[1] Trial was held on May 7, 2013, during which time the parties offered the testimony of Mr. Barton and Ms. Diaz-Pereira and introduced various exhibits. After taking the matter under advisement, the trial court rendered judgment on May 13, 2014 in favor of-Mr. Barton against the School Board and awarded Mr. Barton $57,149 in damages. The trial court found that Ms. Diaz-Pereira was not liable to Mr. Barton and dismissed his claims against her -with prejudice. Both Mr. Barton and the School Board appeal this judgment.

ISSUES

In its appeal, the School Board argues the trial court erred in reversing the School Board’s decision to terminate Mr. Barton. It maintains the trial court erred in determining the School Board abused its discretion in accepting the principal’s version of the incident and finding the *320 incident was sufficient to justify Mr. Barton’s termination.
In Mr. Barton’s appeal, he asserts the trial court ¿rred in only awarding $57,149 in damages. He contends he is owed the full amount of stipulated wages, or $138,000, that he lost from the time of the wrongful termination through the time of trial.

DISCUSSION

Liability

At trial, the parties stipulated that Mr. Barton was a non-tenured teacher. Accordingly, his termination is governed by La. R.S. 17:442. At the time Mr. Barton was hired and terminated, La. R.S. 17:442[2] provided:
Each teacher shall serve a probationary term of three years to be reckoned from the date of his first appointment in the parish or city which the teacher is serving his probation. During the probationary term the parish or city school board ... may dismiss or discharge any probationary teacher upon the written recommendation of the parish or city superintendent of schools ... accompanied by valid reasons therefor.
Any teacher found unsatisfactory by the parish or city school board ... at the expiration of the said probationary term, shall be notified in writing by the board that he has been discharged or dismissed; in the absence of such notification, such probationary teacher shall automatically become a regular and permanent teacher in the employ of the school board of the parish or city ... in which he has successfully served his three year probationary term....
Thus, a non-tenured teacher may be discharged as long as there are valid reasons for his discharge. McKenzie v. Webster Parish School Bd., 609 So.2d 1028, 1031 (La.App. 2nd Cir.1992). The parties in this case disagree as to whether valid reasons existed for Mr. Barton’s termination.[3]
Although the statute does not provide for judicial review of the discharge of a probationary teacher, the jurisprudence holds that such a review is available to ensure that the school board did not abuse its discretion. McKenzie, supra, citing Myres v. Orleans Parish School Bd., 423 So.2d 1303 (La.App. 4th Cir.1982), unit denied, 430 So.2d 657 (La.1983).
| 6In Ford v. Caldwell Parish School Bd., 541 So.2d 955, 957-59 (La.App. 2nd Cir. 1989), the Second Circuit considered the extent and scope of judicial review of the discharge of a probationary teacher by a school board and concluded that the role of the reviewing court is to determine whether the great discretion of the school board was abused. The court explained that “[wjhere there is a rational basis, supported by substantial evidence, for the school board’s discretionary determination, the courts cannot and should not substitute their judgment for that of the school board.” Id. at 959. Judicial review of the *321 school board’s decision does not require a trial de novo; however, additional evidence may be offered if there is a showing of a need for additional evidence beyond what was offered at the school board hearing. Where a full scale hearing is held and all parties in interest are heard, including the teacher, the district court may limit its review to an examination of the transcript of the hearing, unless there is a showing of a need for additional evidence. Id. at 958.
In the present case, a hearing was held before the JPPSS Department of Human Capital where Mr. Barton appeared with counsel and was afforded an opportunity to be heard. However, the record before us does not contain a transcript of the hearing and it is unclear what specific evidence was considered by the hearing officer in making her decision to uphold the principal’s recommendation of termination. The recommendation of the hearing officer was then reviewed by the chief human capital officer, who concurred with the recommendation for termination after reviewing “the documents associated with the employment recommendation.” Thereafter, the superintendent agreed with the recommended termination after reviewing “the personnel documents.” The School Board then upheld the superintendent’s recommendation without further review.
17Upon review of the School Board’s termination of Mr. Barton, the trial court was presented with new testimony from Mr. Barton and Ms. Diaz-Pereira. Additionally, several exhibits were admitted, but it is unclear whether said exhibits were the same ones considered by the JPPSS hearing officer.
During trial, Mr. Barton testified that he has worked in education over 30 years and has never had any prior accusations of improper conduct. He stated that on the day of the incident, there'were approximately 25-30 students in his third-grade class. He explained that the class was playing dodgeball when a ball became stuck in a tree. As he was trying to dislodge the ball, he saw KeShawn throw a cone, which was being used to set boundaries in the dodgeball game, at him. Mr. Barton testified he tried to block the cone with his hand, but it hit him in the head. He then saw KeShawn make a move for another cone. He placed himself between the cone and KeShawn and put his hands out, but KeShawn continued towards the cone. At that time, Mr. Barton grabbed KeShawn’s shirt to stop him from grabbing the cone. The two got off balance, but then Mr. Barton let go of KeShawn’s shirt and told him to sit down, which he did. Mr. Barton stated that he did not sling KeShawn to the ground, swing him around, or curse at him. He testified that he was concerned for the safety of his students because he did not know if KeSh-awn would throw another cone that might hit him or any of the other students, and he had no doubt KeShawn was going to get another cone.
Ms. Diaz-Pereira testified she did not witness the incident but learned of it after KeShawn came to the office after P.E. class and told her what happened. She explained that she had him write down a statement about what happened and then she talked to him and wrote her understanding of what happened on his statement, which was that he accidentally kicked a cone that hit Mr. Barton.
[sThe next day, she had the students in the P.E. class write down what had happened. These statements were admitted at trial after the parties stipulated to their admissibility and waived any hearsay objections they may have had. The students’ statements made clear that KeShawn either threw or kicked a cone at Mr. Barton and that Mr. Barton grabbed KeShawn’s shirt; however, they contained some incon *322 sistencies and some only relayed parts of the incident. During trial, Mr. Barton testified that one of the students who gave a statement was not even in his P.E. class that day because she had been transferred to another class. Ms. Diaz-Pereira admitted that the student was in another P.E. class at the time of the incident but maintained she could have seen the incident from the proximity of her class.
Based on her review of the students’ statements, Ms. Diaz-Pereira concluded that Mr. Barton acted inappropriately and out of anger. She further testified that she did not believe there was any danger to any of the students so as to justify Mr. Barton’s conduct. She acknowledged that a student can be restrained if the student is being aggressive and could hurt themselves, someone else or the teacher, but she stated that she did not believe this was the case. Ms. Diaz-Pereira admitted that had Mr. Barton grabbed KeShawn in an attempt to calm him or prevent him from getting a cone, his conduct would not have been considered impermissible corporal punishment. However, she explained that she did not believe KeShawn was acting out of anger or trying to hit Mr. Barton on purpose.
The JPPSS policies and procedures, portions of which were introduced into evidence, provide that corporal punishment is not authorized except as set forth in the manual. The manual specifically states that
[tjeachers shall not physically engage in disciplining students unless it is for self-defense, the safety of the student or other students, or the prevention of gross property damage; in all such instances, the teacher |9is limited to the use of reasonable force commensurate with all the facts and circumstances.
The School Board terminated Mr. Barton for impermissible corporal punishment for grabbing KeShawn by the shirt after KeShawn threw or kicked a cone at Mr. Barton, striking him in the head. We find the record, which does not include a transcript of the School Board hearing so as to indicate what evidence it considered, does not provide a rational basis supported by substantial evidence for the School Board’s termination of Mr. Barton for this stated reason.
By its own policies, Mr. Barton’s conduct was permissible if he was acting in self-defense or for the safety of the other students. It is undisputed that KeShawn threw or kicked a cone at Mr. Barton, striking him in the head. Mr. Barton testified that KeShawn then went to grab another cone at which time Mr. Barton grabbed him by the shirt to prevent him from reaching the cone. He explained that he stopped KeShawn out of concern for the safety of the other students in the class and himself, i.e. he feared KeShawn would throw the second cone and hit another student or him again. Nothing in the record contradicts Mr. Barton’s testimony in this regard. In fact, some of the students’ statements indicated that KeSh-awn tried to punch Mr. Barton upon being restrained and that KeShawn cursed at Mr. Barton. The evidence clearly shows that Mr. Barton reacted to KeShawn’s conduct within the guidelines set forth by the School Board. Therefore, under the circumstances of this case, we find that Mr. Barton’s action of grabbing KeShawn by the shirt to prevent him from throwing a second cone that might have hit another student or the teacher did not constitute a valid reason for his termination. Accordingly, we find the trial court properly found that the School |inBoard abused its discretion in terminating Mr. Barton and *323 properly reinstated Mr. Barton.[4]
Our conclusion is based on the fact, as noted above, the trial court was required to determine whether the School Board abused its great discretion in terminating Mr. Barton. While a trial de novo is not mandated and the trial court can base its decision solely on review of the evidence the school board relied upon in deciding to terminate the teacher, the trial court may entertain new evidence upon a showing of a need for additional evidence beyond what was offered at the school board hearing.
At the trial court hearing in this case, the parties did not call upon the trial court to determine whether there was a need for additional evidence beyond what was offered at the School Board hearing, but rather both parties simply introduced evidence and called witnesses without objection. Furthermore, neither party introduced exhibits that were specifically identified as the evidence relied upon by the School Board in deciding to terminate Mr. Barton. On this record, neither the trial court nor this Court can discern what evidence the School Board, superintendent, and JPSS Human Capital Department relied upon in forming recommendations and decisions to terminate. Additionally, we cannot discern whether all of the evidence relied upon by those entities is even a part of this record.
As previously noted, the only permissible new evidence allowed at the trial court hearing is evidence beyond what was offered at the School Board hearing. Ford, 541 So.2d at 958. Therefore, when new evidence is produced before the trial court, the trial court is called upon to weigh the credibility of both new witnesses Inand other new evidence. The trial court must also review the evidence upon which the School Board relied to reach its decision to terminate in the context of this new evidence. In this case, the trial court could not make that comparative analysis.
Since the parties introduced new evidence, at least in the form of the witnesses’ testimonies, and the parties failed to identify or discern that evidence which was relied upon by the School Board, the parties, in essence, approached the district court hearing as a trial de novo. As such, the trial court was called upon to weigh the credibility of Mr. Barton and Ms. Diaz-Pereira and then review the other evidence introduced in the context of that testimony. The trial court ultimately concluded that Mr. Barton’s behavior did not amount to impermissible corporal punishment justifying termination. Because we do not know what evidence upon which the School Board relied, we can only review the evidence introduced by the parties to the district court and decide whether the district court abused its discretion on the evidence presented. Based on our review of the record before us, we cannot find the trial court erred.

Damages

Mr. Barton argues that the trial court erred in only awarding $57,149 in damages for his wrongful termination.
In Louisiana, the employer-employee relationship is a contractual one. Employment contracts are either fixed term or terminable at will. Read v. Willwoods Community, 14-1475, *6 (La.3/14/15), 165 So.3d 883, 887, 2015 La. LEXIS 494. Under a fixed term contract, “the parties agree to be bound for a certain period during which the employee is *324 not free to depart without assigning cause nor is the employer at liberty to dismiss the employee without cause.” Id. Conversely, an “at will” employee is subject to dismissal by his employer at any time, for any reason, without the employer incurring liability for wrongful discharge. Id. In the | ^absence of a contract or an agreement establishing a fixed term of employment, the employee is considered to have an “at will” employment by default. Quebedeaux v. Dow Chem. Co., 01-2297 (La.6/21/02); 820 So.2d 542, 545.
There are exceptions to the general rule that an “at will” employee may be terminated for any reason and at any time. An employee may have a cause of action where his or her termination violated a statutory or constitutional provision, i.e., employers are prohibited from taking adverse employment actions based upon certain protected characteristics such as race, gender, national origin or religion. Square v. Hampton, 13-1680 (La.App. 4 Cir. 6/4/14); 144 So.3d 88, 97.
The cause of action for wrongful termination is established by La. C.C. art. 2749, which states:
If, without any serious ground of complaint, a man should send away a laborer whose services he has hired for a certain time, before that time has expired, he shall be bound to pay to such laborer the whole of the salaries which he would have been entitled to receive, had the full term of his services arrived.
Thus, only those employees who have been hired for a definite time period have a cause of action for wrongful termination. See Dean v. Tensas Parish School Bd., 505 So.2d 908 (La.App. 2nd Cir.1987), writ denied, 508 So.2d 826 (La.1987).
The first question is whether Mr. Barton was an “at will” employee or whether he had a fixed term contract with the School Board. In his petition, Mr. Barton alleged that he was hired by the School Board “to work for a fixed term to end at the end of the academic year 2011-12.” This allegation was denied by the School Board in its answer. Thus, Mr. Barton had the burden of proving he had a fixed term contract thereby giving him a cause of action for wrongful termination.
The record is devoid of any written contract of employment. (Compare Graham v. Magnolia School, Inc., 297 So.2d 435 (La.1974), where the school was found liable for the plaintiffs wages for the remainder of the year after being | ^wrongfully terminated after the supreme court interpreted the written contract of employment, which was in evidence, to be a fixed term contract as opposed to an indefinite period of time; and Dunn v. Bessie F. Hiern School, Inc., 209 So.2d 538 (La.App. 4th Cir.1968), writ denied, 252 La. 469, 211 So.2d 331 (1968), where the court found an oral contract of employment between the teachers and the school for a specific school year before awarding damages for wrongful termination.) However, Mr. Barton testified that he had been hired as an itinerant P.E. teacher in August 2011, after having been hired in May 2011 as a part-time coach for Grace King High School. Additionally, Ms. Diaz-Pereira testified that Mr. Barton had been assigned to her school, Boudreaux Elementary, as a P.E. teacher and was working as such at the time of the incident in January 2012.
Based on this testimony, it appears a fixed term contract can be implied by virtue of La. R.S. 17:442. The legislature created an exception to- the “at will” employment doctrine when it adopted statutes providing permanent tenured positions to teachers.- Thorne v. Monroe City School Bd., 542 So.2d 490, 491 (La.1989). The legislature further provided protection *325 to non-tenured teachers by virtue of La. R.S. 17:442, establishing a three-year probationary period during which a teacher 'may'not be discharged absent valid reasons.
In Palmer v. La. State Bd. Of Elem. & Secondary Educ., 02-2043 (La.4/9/03); 842 So.2d 363, the Louisiana Supreme Court stated that a probationary teacher has a fixed term employment of three years under La. R.S. 17:442 irrespective of whether the teacher’s contract of employment is for one year or more. The supreme court explained:
The statute fixes the probationary term at three years beginning from the date of the first appointment of the teacher. There is no provision for the employment of a probationary teacher for a different period of time. This in our opinion clearly shows that the act contemplates that the | uemployment should cover a period of three years. The period of employment being fixed by statute the school board is without authority to change it by contract or otherwise. To hold that school boards could escape the provisions of the act by employing probationary teachers for a shorter period of time would render the provisions of the Act with reference to probationary teachers meaningless and permit the dismissal of probationary teachers without cause in derogation of the provisions of the act.
Therefore, by statute, Mr. Barton had a three-year contract with the School Board.
Under La. C.C. art. 2749, the damages owed for wrongful termination is the entire salary the employee would have received under the terms of the contract had he not been wrongfully terminated. Andrepont v. Lake Charles Harbor & Terminal Dist., 602 So.2d 704, 707-07 (La.1992). Thus, Mr. Barton is entitled to damages for his entire salary for the term of his contract with the School Board, which was three years under La. R.S. 17:442, or through the end of the 2013-2014 school year. Since the parties stipulated that Barton would have earned $138,000 from the date of his suspension through the end of the 2013-2014 school year, he is entitled to $138,000 in damages. As such, we find the trial court erred in only awarding $57,149 for damages. We note that the trial court suspended Mr. Barton without pay for 30 days from the date of the incident. Although we find no authority for the trial court to impose such a suspension on the record before us, neither party raises this suspension as an issue on appeal. Therefore, we decline to address the matter and leave that portion of the judgment intact.
Contrary to arguments by the School Board, Mr. Barton had no duty to mitigate his damages. The Louisiana Supreme Court has made it clear that a fixed term employee who has been wrongfully terminated has no duty to mitigate lost salary damages. Andrepont, 602 So.2d at 707. The supreme court has expressly stated that a wrongfully terminated employee’s damages for loss of salary cannot be reduced by any amounts that he may have earned between termination and expiration of the contract period, and the employer “cannot successfully maintain 11Bthat these damages should be reduced because [the employee] could have or should have sought other employment.” Id.
Further, contrary to Mr. Barton’s claims and the trial court’s judgment, Mr. Barton is not entitled to damages for mental anguish and distress. There is no provision that allows said damages for the breach of an employment contract absent bad faith or the intentional infliction of emotional distress, which is a separate cause of action. Accordingly, we find the *326 trial court erred in including a damage award for mental anguish and distress.

DECREE

For the foregoing reasons, we find the trial court properly found that the School Board abused its discretion in terminating Mr. Barton. Additionally, we find the trial court erred in only awarding $57,149 in damages and for including damages for mental anguish and distress in the award for wrongful termination. Accordingly, we amend the award of damages to $138,000, minus his salary for 30 days per the trial court’s suspension without pay, and affirm the judgment of the trial court as amended.

AFFIRMED IN PART: AMENDED IN PART

. Mr. Barton also named Cheryl Farmer, the personnel administrator and alleged representative of the School Board, and Kisha Butler, the natural tutrix of KeShawn, as Defendants; however, Mr. Barton dismissed his claims against these two defendants on the day of trial.

. La. R.S. 17:442 was amended, effective July 1, 2012, to change how a teacher transitions from a nontenured teacher to a tenured teacher. In particular, a teacher no longer automatically becomes a tenured teacher upon serving a three-year probationary term absent notification of his discharge or dismissal for’ valid reasons. Rather, a teacher becomes tenured after being rated "highly effective” for five out of six years, and only after the teacher is notified in writing that he has been awarded tenure status. The 2012 amendment specifically provides that a teacher who has not been awarded tenure is an "at-will” employee.

. Neither party challenges the procedural manner in which Mr. Barton was terminated or claims that the procedural requirements of the teacher tenure law, La. R.S. 17:441, et seq., were not followed.

. We note that the trial court restricted Mr. Barton’s reinstatement to "work with Jefferson Parish high school students, only.” Based on the record before us, there is no authority for the trial court to impose such a restriction. However, neither party raises this issue on appeal and, therefore, we decline to address this matter.