Anthony Allen NOEL,
Plaintiff-Appellee,
Cross-Appellant,

v.

Colleen ANDRUS, et al., Defendants,

Lafayette Parish School Board,
Defendant-Appellant
Cross-Appellee.

No. 86–4163.

United States Court of Appeals,
Fifth Circuit.

March 3, 1987.

L. Lane Roy, Roy & Hattan, Lafayette, La., for Lafayette Parish School Bd.

Connie Welcome-Sadler, Lafayette, La., for Anthony Allen Noel.

Before VAN GRAAFEILAND,* HIGGINBOTHAM, and JONES, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Anthony Noel, a probationary school teacher, seeks reinstatement and damages from the Lafayette Parish School Board and its members for not renewing his contract on grounds of dishonesty. Noel argues that the School Board denied his federal constitutional rights to a pre-termination hearing. Pendent to his 42 U.S.C.

* Circuit Judge of the Second Circuit, sitting by designation.

§ 1983 claim, Noel argues that the School Board did not comply with La.Rev.Stat. § 17:442 in deciding not to renew his contract and that its reasons for doing so were false and defamatory. The district court, sitting without a jury, found that at least two of the charges against Noel were true, justifying nonrenewal.

But the district court also ruled that the School Board denied Noel's right to a pre-termination hearing under state law. First, the district court interpreted the Louisiana Teacher Tenure Act, La.Rev.Stat. § 17:441–:446, to require a hearing before a probationary school teacher may be dismissed on grounds of unreasonable conduct, such as dishonesty. Second, the district court found that the School Board did not provide Noel with sufficient notice before his pre-termination meeting with Superintendent Vasher. The district court went further to hold that Noel had an implied property right in continued employment and was entitled to a pre-termination hearing under the fourteenth amendment as well. The district court awarded Noel $500.00 in damages for the deprivation of his due process rights and ordered the School Board to give him a hearing on his suitability for tenure.[1] Both parties appeal. Because we find that Noel's liberty interests were not violated, that Noel had no property interest in his job, and that the district court's construction of La.Rev.Stat. § 17:442 was erroneous, we affirm in part, reverse in part, and remand.[2]

## I

The Lafayette Parish School Board hired Noel as a non-tenured public school teacher on August 24, 1981. Under Louisiana law, Noel could not acquire tenure until he satisfactorily completed three full years of probationary employment. La.Rev.Stat. § 17:442. Noel taught special education at Yountville Elementary School during the 1981–82 school year, followed by health and physical education at Paul Breaux Junior High School during the 1982–1983 and 1983–1984 school years. On April 12, 1984, Vasher sent a form letter to all teachers, including Noel, informing them that they would be hired again for the 1984–1985 school year absent unforeseen circumstances.

During the summer of 1984, while still on probationary status, Noel volunteered and was assigned to teach driver's education to sixty students at Carencro High School. Under School Board policy, Noel was paid on an hourly basis and was limited to nine hours of driving time a day. Because more time was required to teach all sixty students if he was to have a vacation before the fall semester, Noel wanted to work longer hours. He testified that Larry O'Quinn, the driver's education coordinator at Carencro High School, gave him permission to drive more than nine hours a day. According to Noel, O'Quinn instructed him to record his excess hours and claim them for days he did not work; that he did so, but never claimed credit for time not worked.

Noel, however, admitted that on July 26 he traveled to New Orleans with Joseph Glaude, taking two days of vacation without authorization. Noel testified that after attempting to find his supervisors—Chester Baudoin and Frank Foreman—he informed Valerie Brouchet, a secretary in the transportation department, of his trip and told her that he would leave the training car at Paul Breaux Junior High School.

While Noel was in New Orleans, a representative of Louisiana Motors, which had loaned the car to the School Board for the purposes of the driver's education program, called Baudoin to tell him that the representative had been unable to find the car. Baudoin and Foreman then searched

---

1. Because it ordered the School Board to provide Noel a hearing, the district court did not rule on his claims for reinstatement or for compensatory and punitive damages.

2. We note at the outset that the district court's provision of $500.00 in general damages for the procedural due process violation cannot withstand the scrutiny of *Carey v. Piphus*, 435 U.S. 247, 266, 98 S.Ct. 1042, 1053, 55 L.Ed.2d 252 (1978).

for the car, also without success. According to the report later filed with the School Board by Vasher, Baudoin and Foreman called Noel's home and spoke to his wife, who said that Noel was in New Orleans and had received permission to use the car for the trip.

Upon returning from New Orleans on July 27, Noel attended a professional improvement seminar. At this seminar, Baudoin asked Noel to come to his office on the morning of July 30. He did so, and in a meeting lasting approximately two hours, Baudoin and Foreman told Noel that they suspected that he had filed claims for days he did not teach and had made untruthful statements regarding the use of the training car. Noel replied that he had driven to New Orleans in Glaude's car, that he had told Brouchet about his trip, and that O'Quinn had authorized his "billing" practice.

While investigating these charges, Baudoin and Foreman learned that Noel had asked two students, Valerie Baptiste and Lucretia Francois, to lie for him. Baudoin and Foreman completed their investigation and filed a report with Vasher on August 3, 1984. On that same date, at Noel's request, Vasher and Foreman met with Noel who responded to the charges. Although given the opportunity to do so, Noel presented no evidence other than his own statement.[3]

After the August 3 meeting, Vasher submitted a written report to the School Board in a closed executive session, recommending that Noel's contract not be renewed because he had lied about the training car, he had claimed pay for days not worked, and he had asked Baptiste and Francois to lie for him. The School Board decided not to renew Noel's employment and on August 16, 1984, Vasher gave Noel written notice of the School Board's decision.

**3.** Noel testified that he wanted to call as witnesses Glaude, Baptiste, Francois, and the principal of Paul Breaux Junior High School, but did not know that he could do so at the August 3

## II

Noel sued in federal court under 42 U.S.C. § 1983, asserting that the School Board's actions deprived him of his liberty and property rights under the fourteenth amendment. Noel also asserted pendent claims for a violation of his state procedural rights under La.Rev.Stat. § 17:442 and for defamation under La.Civ.Code Ann. art. 2315 (West 1979). The district court found that Noel had lied about the location of the training car and had asked Baptiste and Francois to lie for him, but found there was insufficient evidence that Noel had claimed pay for work not done. The district court also denied Noel's state law claim of defamation finding the School Board had not published information about the incident.

The district court then held that procedural rights secured by state statute had been denied. The district court read La. Rev.Stat. 17:442 to require a hearing before a probationary teacher may be dismissed on grounds of dishonesty and found that the August 3 meeting with Vasher was an inadequate hearing, for lack of sufficient notice of Noel's right to present evidence. Finally, "for the appellate court" it found that Noel had an implied property right in his continued employment, protectible under the fourteenth amendment. The district court then awarded Noel $500.00 in general damages and ordered the School Board to provide a hearing on Noel's suitability for tenure.

## III

Noel argues that the School Board did not comply with the statutory requirements of La.Rev.Stat. § 17:442 in that it: (1) failed to provide Noel a pre-termination hearing, (2) failed to provide valid grounds on which to base his nonrenewal, and (3) failed to specify the grounds sufficient for review by the School Board. We treat each contention in turn.

meeting. However, Noel never supplemented the evidence put forth at that meeting with statements by any of these parties.

## A

The Lafayette Parish School Board hired Noel as a non-tenured public school teacher pursuant to La.Rev.Stat. § 17:442, which provides:

Each teacher shall serve a probationary term of three (3) years to be reckoned from the date of his first appointment in the parish or city in which the teacher is serving his probation. During the probationary term, the parish or city school board, as the case may be, may dismiss or discharge any probationary teacher upon the written recommendation of the parish or city superintendent of schools, as the case may be, accompanied by valid reasons therefor.

It is undisputed that Noel was a probationary teacher at the time of his termination and that as a general rule, school boards may decline to renew the contract of a probationary teacher without notice or hearing. *See Foreman v. Vermilion Parish School Board,* 353 So.2d 471, 473 (La. Ct.App.1977), *cert. denied,* 355 So.2d 257 (La.1978); *Castille v. Evangeline Parish School Board,* 304 So.2d 701, 703 (La.Ct. App.1975), *cert. denied,* 309 So.2d 342 (La. 1975). Section 17:442 requires only that the decision not to renew occur "upon the written recommendation of the parish or city superintendent of schools, as the case may be, accompanied by valid reasons therefor." La.Rev.Stat. § 17:442. The probationary teacher found to be "unsatisfactory ... shall be notified in writing by the board that he *has been* discharged or dismissed." *Id.* (emphasis added). We are persuaded that the School Board met the statutory requirements for not renewing Noel's contract.

Nevertheless, Noel argues, and the district court found, that La.Rev.Stat. § 17:442 requires a hearing before a non-tenured teacher can be dismissed on grounds of dishonesty. The district court reasoned that "[v]alid is a judgment word; it must therefore contemplate some opportunity for the plaintiff to be heard by the board" and distinguished a long line of Louisiana cases which held that a non-tenured teacher had no property interest giving rise to due process concerns. *See, e.g., Foreman,* 353 So.2d at 471. It noted that these cases dealt with dismissals for educational or business reasons, rather than dismissals for misconduct.

■ We disagree with the district court's construction of La.Rev.Stat. § 17:442.[4] The Louisiana courts have concluded that under the Act, dismissals of probationary teachers for unreasonable conduct do not require pre-termination hearings. In *Foreman,* 353 So.2d at 472–73, the Vermillion Parish School Board dismissed a non-tenured teacher because of his vocal criticisms of the basketball coach and public displays of unsportsmanlike conduct. Similarly, in *Myres v. Orleans Parish School Board,* 423 So.2d 1303 (La.Ct.App.1982), *cert. denied,* 430 So.2d 657 (La.1983), a probationary teacher was dismissed for brandishing a pistol while breaking up a student fight. Although both Foreman and Myres were, like Noel, discharged for their conduct, the Louisiana courts held that neither Foreman nor Myres were entitled under state law to notice or to a pre-termination hearing.

The Louisiana Teacher Tenure Act does not stop with the directive of La.Rev.Stat. § 17:442. Under its scheme, if, upon investigation, allegations of misconduct or incompetence are deemed valid by the superintendent and the School Board, probationary teachers may be dismissed upon written statement. By contrast, the Act provides detailed procedural protections for tenured teachers. La.Rev.Stat. § 17:443.

---

**4.** We note that one Louisiana case suggests that Noel does have a right to some sort of hearing because it requires "a specific recitation of facts sufficient to afford the dismissed teacher opportunity for rebuttal." *Serignet v. Livingston Parish School Board,* 282 So.2d 761, 763 (La.Ct.App. 1973). However, the *Serignet* decision has been sharply criticized by other circuits of the Louisi-ana Court of Appeals, *see, e.g., Booker v. Richland Parish School Board,* 393 So.2d 785 (La.Ct. App.1981); *Hayward v. Rapides Parish School Board,* 374 So.2d 1281 (La.Ct.App.1979), which state that *Serignet* is not the law of Louisiana. These cases stress that the probationary teacher has no right to a pre-termination hearing. Accordingly, we do not find *Serignet* controlling.

The district court erred in confining its focus to the directive that a School Board act on *valid* grounds. Alone, there is an arguable implication that some process is required. But in the context of the entire Act, it is apparent, and the Louisiana courts have ruled, that the Louisiana legislature's direction that superintendents have "valid" reasons is essentially heuristic and provides probationary teachers only that protection, at best.

### B

■ Noel next contends that the reasons provided by the School Board for his dismissal were invalid because they were false and because they involved actions outside of his "regular" employment. La.Rev.Stat. § 17:442 provides only that the School Board must present "valid reasons" to Noel in a written statement. As we have explained, unlike the dismissal of tenured teachers, La.Rev.Stat. § 17:443, no provision is made for judicial review of the reasons provided for dismissal of probationary teachers. The reasons for dismissal of a probationary teacher are committed to the sound discretion of the School Board, and unless the teacher can clearly show that the Board has abused its discretion, the court will not interfere. *State ex rel. Piper v. East Baton Rouge Parish School Board,* 213 La. 885, 35 So.2d 804, 808 (1948).

■ Dishonesty is a reasonable ground for dismissal and was found by the district court. Moreover, Noel's actions, while "outside" his regular teaching contract, involved his employment by and performance for the School Board. Noel has therefore failed to show that the School Board abused its discretion in refusing to renew his employment.

### C

■ Finally, the statute requires the superintendent to provide factual detail in writing to the School Board sufficient for its intelligent and fair review. *See Booker v. Richland Parish School Board,* 393 So.2d 785 (La.Ct.App.1981). Contrary to the assertions of Noel, Vasher's report to the School Board contained sufficient detail to meet this requirement. The three-page report related the charges brought against Noel, the witnesses questioned during the investigation, and the names and phone numbers of students allegedly taught by Noel on the days in which he was admittedly in New Orleans. The report also specifies the misuse of the car, the conversation with Noel's wife in which she said he had taken the car to New Orleans, and the names of the students he asked to lie for him. Finally, the report lists the days on which Noel claimed pay for work not done and the hours reported on each day. The report provided sufficient facts from which the School Board could reach its decision.

### IV

Noel next challenges the district court's denial of his state law defamation claim. To recover for defamation under Louisiana law, Noel must show the following: (1) defamatory words, (2) publication, (3) falsity, (4) malice, actual or implied, and (5) injury. *Farria v. La Bonne Terrebone of Houma, Inc.,* 476 So.2d 474 (La.Ct.App. 1985).

The district court found that the School Board had not published the allegations made against Noel in the report to Vasher or in Vasher's recommendation to the School Board. This finding is reviewable under the clearly erroneous standard of Fed.R.Civ.P. 52(a). *See Anderson v. City of Bessemer City,* 470 U.S. 564, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985).

■ Noel says that the publication occurred in a conversation in which a School Board employee told Vasher that Noel had asked the employee's son to lie on Noel's behalf. This claim is without merit, as the statements were not published to a third party but made only to Vasher, who was charged by statute with reviewing the allegations.

## V

Recovery under § 1983 here requires proof that the School Board deprived Noel of a constitutionally protected right. Noel points to the fourteenth amendment, arguing that Louisiana has deprived him of both liberty and property interests.[5]

### 1. Liberty Interests.

■ Noel argues that his dismissal denied his liberty interests because it was based upon charges of dishonesty. *See Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972); *Wells v. Hico Independent School District*, 736 F.2d 243, 256 (5th Cir.1984). There is no deprivation of liberty absent injury to employment or employment opportunities with a later denial of procedural due process for its redress. *In re Selcraig*, 705 F.2d 789, 796 (5th Cir.1983). But first, Noel must establish public disclosure of the adverse allegations. *See Bishop v. Wood*, 426 U.S. 341, 348, 96 S.Ct. 2074, 2079, 48 L.Ed.2d 684 (1976). As we explained, the district court's finding of no publication cannot be said to be clearly erroneous on this record.

In *Dennis v. S & S Consolidated Rural High School District*, 577 F.2d 338, 340 (5th Cir.1978), we held that "mere nonrenewal of a teacher's contract is not such a blight upon his good name, reputation, honor, or integrity as to constitute a deprivation of liberty." Since Noel proved nothing more, his liberty interests were not denied by nonrenewal of his contract.

### 2. Property Interests.

"[U]nder circumstances not constituting a deprivation of 'liberty,' there is no constitutional right to a hearing before discharge of non-tenured teachers who have no property interest in continued employment." *Kelly v. West Baton Rouge Parish School Board*, 517 F.2d 194, 198 (5th Cir.1975). Such property interests "are created and

their dimensions are defined by existing rules *or understandings* that stem from ... state law." *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985) (quoting *Roth*, 408 U.S. at 577, 92 S.Ct. at 2709). If no such property interest exists, then no due process concerns are raised by the teacher's dismissal. *Id.*

Louisiana courts read La.Rev.Stat. § 17:442, requiring a probationary teacher to complete three years of service before receiving tenure, to provide no constitutionally protected property or liberty interests in continued employment. *Foreman*, 353 So.2d at 471; *see also Kelly*, 517 F.2d at 198. But the district court found that the form letter sent to all teachers and received by Noel on April 12, 1984, and the School Board's recognized policy of following principals' tenure recommendations created a "mutually explicit understanding" that Noel would be granted tenure.

■ The Supreme Court has recognized that mutually explicit understandings may give rise to a property right. *Roth*, 408 U.S. at 564, 92 S.Ct. at 2701; *Perry v. Sindermann*, 408 U.S. 593, 601–02, 92 S.Ct. 2094, 2699–2700, 33 L.Ed.2d 570 (1972); *see also Wells v. Hico Independent School District*, 736 F.2d 243 (5th Cir. 1984), *cert. denied,* —— U.S. ——, 106 S.Ct. 11, 87 L.Ed.2d 672 (1985). However, in the *Roth* and *Sindermann* line of cases, no state statute resolved whether a property interest in one's job existed. "The Supreme Court's holding that an informal understanding may lead to a property interest must therefore be recognized as standing in the absence of an officially promulgated position, one way or the other, on the issue of a teacher's tenure." *Batterton v. Texas General Land Office*, 783 F.2d 1220, 1223 (5th Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 316, 93 L.Ed.2d 289 (1986). The Louisiana legislature denied probationary teachers any constitutionally

---

5. Noel mentions, but does not argue, that his dismissal denied him equal protection. The district court found no basis in fact for this assertion. Since Noel presents no argument that this finding was not supported by the evidence, and we see none after reviewing the record, we affirm the court's finding.

protected property or liberty interest in continued employment. Informal understandings and customs contrary to La.Rev. Stat. § 17:442 cannot be the source of an employee's property interest. *See Batterton*, 783 F.2d at 1223. Thus, we are persuaded that the district court erred in finding that Noel had an implied property interest in his job.

The judgment of the district court is AFFIRMED in part, REVERSED in part, and REMANDED for entry of judgment consistent with this opinion.