**Carlos SAMUEL, Plaintiff–Appellee,**

**v.**

**Morris HOLMES, Maudelle Davis–Cade, J. Berengher Brechtel, Gail Moore Glapion, Carolyn Green Ford and Cheryl Q. Cramer, Defendants–Appellants.**

**No. 97–30284.**

United States Court of Appeals,
Fifth Circuit.

March 31, 1998.

William Francis Wessel, Charlotte Ann Lagarde, Wessel & Associates, New Orleans, LA, for Plaintiff–Appellee.

Ernest L. Jones, New Orleans, LA, for Defendants–Appellants.

Before REAVLEY, JONES and BENAVIDES, Circuit Judges.

REAVLEY, Circuit Judge:

Morris Holmes, the Superintendent of the Orleans Parish School District (OPSD), and five members of OPSD's board, sued by Carlos Samuel after his discharge from school system employment, take this interlocutory appeal from the partial denial of their motion for summary judgment, contending that they are entitled to qualified immunity in their personal capacities. Finding no error, we affirm.

I. Background

Samuel had worked as an internal auditor for OPSD. During the course of his employment, he discovered what he considered to be accounting irregularities by OPSD's Financing Department, leading him to conclude that OPSD had overcharged the federal government. Samuel reported his findings to William Garibaldi, the head of the Internal Audit Department.

Samuel and Garibaldi then prepared an audit report that identified the apparent irregularities and concluded that the overcharges may have violated the Federal False Claims Act (FCA).[1] They submitted their report to Holmes.

The report was disputed by the Finance Department, and Holmes requested an outside auditor's opinion. The auditor's report stated that Samuel's report was unfounded. Holmes prepared a letter recommending that the board fire Samuel. The letter accused Samuel of demonstrating a lack of due care

in conducting the audit and characterized his charges of FCA violations as baseless. The board accepted Holmes' recommendation and terminated Samuel in January of 1996.[2]

Holmes had notified Samuel of the discharge proceedings approximately twenty minutes before they began. Samuel was not permitted to present evidence, call witnesses, or appear on his own behalf.

Samuel sued Holmes and the five board members,[3] in both their individual and official capacities, under 42 U.S.C. § 1983, alleging that they denied him substantive and procedural due process. Samuel also alleged that he was discharged in violation of the FCA's anti-retaliation provision[4] and Louisiana's whistleblower statute.[5]

The defendants moved for summary judgment claiming qualified immunity. The district court granted the motion with regard to the § 1983 claim against the OPSD board members, finding that their reliance on Holmes' written recommendation was objectively reasonable. However, the court denied summary judgment on the § 1983 claim with regard to Holmes himself. Additionally, the court denied summary judgment to all defendants on both the FCA retaliation claim and the state whistleblower claim. The court noted that the defendants had "fail[ed] to cite any authority suggesting that the doctrine of qualified immunity is applicable in the context of such claims."

II. Discussion

An order denying summary judgment on the basis of qualified immunity is immediately appealable when based on a pure issue of law.[6] We lack jurisdiction to review the sufficiency of the evidence, however. Instead, we must accept the facts assumed by the district court and must decide whether those facts were sufficient to state a claim under clearly established law. If not,

---

1. 31 U.S.C. § 3729 (West Supp.1998).

2. Garibaldi, a tenured employee, was suspended with pay pending a hearing.

3. The two board members who did not vote to fire Samuel were not named as defendants in this case.

4. 31 U.S.C. § 3730(h) (West Supp.1998).

5. La.Rev.Stat. Ann. § 42:1169(A)-(C) (West 1997).

6. *Cantu v. Rocha*, 77 F.3d 795, 802 (5th Cir. 1996) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815–15, 86 L.Ed.2d 411 (1985)).

the defendants are entitled to summary judgment.[7]

■ We review denials of summary judgment *de novo*.[8] We view facts in the light most favorable to the non-movant and draw all reasonable inferences in his favor.[9]

A. Section 1983 Claim

■ In *Harlow v. Fitzgerald*, the Supreme Court held that qualified immunity shields government officials performing discretionary functions from individual liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." [10] We review claims of immunity using a two-step analysis. The first question is whether the plaintiff has alleged the violation of a clearly established statutory or constitutional right. If so, we move to the second question: whether the defendants' conduct was "objectively reasonable." [11]

■ As an initial matter, to decide whether there was a deprivation of constitutional or statutory rights, we must determine whether Samuel had a property right under the Fifth Amendment.[12] "To have a property interest in a benefit, a person ... must have more than a unilateral expectation of it." [13] Property interests "are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." [14]

■ Both sides agree that Samuel was a probationary, or non-tenured, employee at the time of his dismissal. Dismissal of probationary employees is governed, in part, by LA. REV. STAT. § 17:522, which provides:

> Each employee of the Orleans Parish School Board shall serve a probationary term of three years, such probationary term to be reckoned from the date of his first appointment to the position in which he is serving his probation. During this probationary term, the Orleans Parish School Board may dismiss or discharge any probationary employee upon the written recommendation of the superintendent of the Orleans Parish School Board, accompanied by valid reasons therefor.

The above statute notwithstanding, in 1987 the Louisiana legislature directed school boards to develop their own policies governing the dismissal of non-tenured employees. Section 17:81.5 provides:

> Not later than January 1, 1988, each city and parish school board shall develop and adopt rules and policies which it shall use in dismissing school employees who have not attained tenure in accordance with applicable provisions of law and whose dismissal is not a result of a reduction in force.... [15]

The OPSD developed policies in 1989 governing such dismissals. The relevant provision in this case entitled probationary employees to three levels of hearings before dismissal.[16] Level I is a meeting between the employee and his immediate supervisor; level II is a meeting between the employee, supervisor, and the division head; level III is a six-step hearing which includes opening and closing statements and the presentation of witnesses and evidence from both sides. The district court found that Samuel was granted neither a level I nor a level III hearing.

---

7. *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 534 (5th Cir.1997).

8. *Texas v. Thompson*, 70 F.3d 390, 392 (5th Cir. 1995).

9. *Id.*

10. 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).

11. *Nerren v. Livingston Police Dep't*, 86 F.3d 469, 473 (5th Cir.1996).

12. *See Siegert v. Gilley*, 500 U.S. 226, 232, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991).

13. *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).

14. *Id.*

15. LA.REV.STAT. ANN. § 17:81.5 (West 1997).

16. Policy 4.118.12–R.

Policy 4.118.12–R also includes a "for cause" requirement, providing: "The Board shall not discharge any non-tenured employee whose dismissal is not a result of reduction in force, or the expiration of an employment contract, without just cause." Defendants do not contend that Samuel's firing was because of a force reduction or the expiration of his contract.

In *Noel v. Andrus*, we decided that a probationary teacher employed by the Lafayette Parish School Board in Louisiana had no property interest in continued employment.[17] But we based this holding on the absence of anything other than "[i]nformal understandings and customs" that could give rise to a property interest.[18] Since *Noel* was decided, the OPSD has issued Policy 4.118.2–R pursuant to LA. REV. STAT. § 17:81.5, that grants procedural protections—including a "for cause" requirement—to probationary employees. In *Cowart v. Lee*, a Louisiana appellate court held that § 17:81.5, even absent any implementing regulations, created a protected property interest for non-tenured employees.[19]

The defendants argue LA. REV. STAT. § 17:522 creates an exception to § 17:81.5 for OPSD. However, § 81.5 appears to provide additional protection in addition to that already provided in § 522. In *Quina v. Orleans Parish School Board*, before § 81.5 was passed, a Louisiana appellate court held that § 522 required that OPSD have a valid reason for the discharge, and provided a cause of action against the Board if it did not.[20] In addition, subsection 522(B)(1) provides that, in the absence of written notification of unsatisfactory performance, a probationary employee automatically becomes a permanent employee at the end of his or her probationary period.[21] Section 522 alone arguably provides a protected property interest for non-tenured employees, and certainly does not undermine the protections provided by § 81.5. The OPSD board must have thought so when it adopted Policy 4.118.12–R, discussed above.

Having established that Samuel did have a protected property interest in continued employment, we can continue with the qualified immunity analysis and ask whether the defendants violated his due process rights in that property interest. "Once it is determined that a public employee has a protected interest in continued employment, the Constitution requires that he be given notice and an opportunity to be heard prior to termination."[22] The defendants point to *Brown v. Texas A & M University*, in which we noted that the university's failure to comply with its own pretermination regulations did not by itself amount to a violation of the Due Process Clause.[23] However, in *Brown*, the plaintiff was given notice and the opportunity to contest the charges prior to termination, sufficient to satisfy the constitutional minima.[24] In this case, Samuel was notified that he was to be terminated twenty minutes before the meeting, and he was not allowed to present his version of the events.

Defendants also direct us to *Ford v. Caldwell Parish School Board*, as illustrating the

---

**17.** 810 F.2d 1388 (5th Cir.1987).

**18.** *Id.* at 1395.

**19.** 626 So.2d 93, 96 (La.Ct.App.1993).

**20.** 224 So.2d 835, 839 (La.Ct.App.1969).

**21.** LA. REV. STAT. 17:522(B) (West 1997). *See also Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538–39, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985) (holding that a state statute which stated that employees were "entitled to retain their positions 'during good behavior and efficient service,' who could not be dismissed 'except ... for ... misfeasance, malfeasance, or nonfeasance in office,'" created property interests protectable by the Due Process clause). This

contrasts sharply with the employment provision in *Board of Regents v. Roth*, where the Supreme Court held that an employee did not have a property interest because the terms of employment "did not provide for contract renewal absent 'sufficient cause.' Indeed, they made no provision for renewal whatsoever." *Roth*, 408 U.S. at 578, 92 S.Ct. at 2709.

**22.** *Jones v. Orleans Parish Sch. Bd.*, 679 F.2d 32, 36 (5th Cir.), *modified on other grounds*, 688 F.2d 342 (5th Cir.1982).

**23.** 804 F.2d 327 (5th Cir.1986).

**24.** The defendant in *Brown* had multiple meetings with supervisors over a period of two months, in which the focus was his proposed termination. *Id.* at 335.

wide latitude afforded school boards in dismissing probationary employees.[25] That case is of no benefit, however, because the plaintiff's complaint was not with procedure, but with the validity of the stated reasons for her discharge. The court recognized that she

> was allowed to give her version of the events at length and in detail at the school board hearing. She was given ample notice of the hearing [and] was represented by counsel at the hearing. . . . [26]

Nothing in *Ford* suggests that school boards have discretion to terminate employees without adequate notice and a hearing.

Samuel was informed of the termination proceedings twenty minutes before the hearing. He did not have the opportunity to introduce evidence, call witnesses, or contest the accusations against him in any way. These facts are sufficient to state a violation of his due process rights.

█ The final step in the qualified immunity analysis is whether the district court erred by not concluding that Holmes's conduct was "objectively reasonable" as a matter of law. The court highlighted Holmes's awareness of the Board's regulations, entitling Samuel to three levels of hearings. The court also noted Holmes's knowing failure to provide a level III hearing—and his awareness, based on his attempted justifications, that his conduct likely violated the regulations.[27] Given these facts, we cannot say that the court erred in refusing to grant Holmes qualified immunity on the § 1983 claim.

### B. FCA Claim

█ The defendants contend that they are entitled to qualified immunity from Samuel's claims under the FCA. The FCA's whistleblower provision grants a private right of action to

> [a]ny employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment by his or her employer because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under this section, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section, shall be entitled to all relief necessary to make the employee whole.[28]

The statute is silent on the existence of qualified immunity.

The defendants have not cited, nor has our research disclosed, any case recognizing qualified immunity from claims arising under § 3730(h). Moreover, qualified immunity seems particularly ill-suited in this context, given the goals of the FCA. In *Robertson v. Bell Helicopter Textron, Inc.*, we observed that the FCA's purpose "is to discourage fraud against the government, and the whistleblower provision is intended to encourage those with knowledge of fraud to come forward." [29] Granting government officials the protection of qualified immunity would hardly spur reluctant employees to step forward.

Moreover, the rights and protections afforded to whistleblowers have been a matter of great public interest for several years. As we noted in *Frazier v. King*, in denying qualified immunity for state officials against a First Amendment claim, a "reasonable official would know that it would be a violation of [the plaintiff's] rights to fire her after she blew the whistle." [30]

**25.** 541 So.2d 955 (La.Ct.App.1989).

**26.** *Id.* at 958.

**27.** Although the district court's brief opinion did not refer to it, there is additional evidence undercutting Holmes's claim to the objective reasonableness of his conduct. Holmes received a letter in August 1995 from the Board's lawyer, concerning the discharge of a custodian, warning that a failure to hold hearings before firing an employee might violate due process rights. This contradicts Holmes's claim that he was reasonable to rely on counsel's advice that no hearing was needed in this case.

**28.** 31 U.S.C. § 3730(h) (West Supp.1998).

**29.** 32 F.3d 948, 951 (5th Cir.1994).

**30.** 873 F.2d 820, 827 (5th Cir.1989).

**179**

## C. Louisiana's Whistleblower Statute

█ The defendants argue that they are entitled to qualified immunity from the claims brought against them under Louisiana's whistleblower statute.[31] We find no authority granting qualified immunity, or even acknowledging that it is available, under that statute.[32] As with the FCA's whistleblower provision, qualified immunity appears inconsistent with the purposes behind the statute as well as the understanding of "reasonable" actions that are protected by qualified immunity.

AFFIRMED.

---

**31.** La.Rev.Stat. Ann. § 42:1169(A)-(C) (West 1997).

**32.** *See also Gossman v. Allen,* 950 F.2d 338, 341 (6th Cir.1991) (denying qualified immunity from suit under Kentucky whistleblower statute);

*D'Aguanno v. Gallagher,* 50 F.3d 877, 879 (11th Cir.1995) (reversing the district court's grant of qualified immunity for claims under Florida state law).