Charlene H. SALGE, Plaintiff,

v.

**EDNA INDEPENDENT SCHOOL
DISTRICT, Defendant.**

No. CIV.A.V–02–88.

United States District Court,
S.D. Texas,
Victoria Division.

Nov. 12, 2003.

Bobby D. Brown, Law Offices of Bobby D. Brown, P.C., Victoria, TX, for Plaintiff.

Christopher Gilbert, Bracewell & Patterson, L.L.P., Houston, TX, for Defendant.

### MEMORANDUM & ORDER

RAINEY, District Judge.

Pending before the Court are the following: Plaintiff's Partial Motion for Summary Judgment (Dkt. # 17); Defendant's Motion for Partial Summary Judgment (Dkt. # 19); Plaintiff's Objections to Defendant's Summary Judgment Evidence (Dkt. # 22 and Dkt. # 34); Defendant's Motion for Partial Summary Judgment on Age Discrimination Claim (Dkt. # 33); Plaintiff's Motion to Conduct Deposition of Karen Morrow and for Expedited Hearing (Dkt. # 36); and Defendant's Opposed Motion for Continuance (Dkt. # 41).

After considering the parties' arguments, the entire record, and the applicable law, the Court is of the opinion that Plaintiff's Partial Motion for Summary Judgment (Dkt. # 17) should be **GRANTED**; Defendant's Motion for Partial Summary Judgment (Dkt. # 19) should be **DENIED**; Plaintiff's Objections to Defendant's Summary Judgment Evidence (Dkt. # 22 and Dkt. # 34) should be **OVERRULED**; Defendant's Motion for Partial Summary Judgment on Age Discrimination Claim (Dkt. # 33) should be **GRANTED**; Plaintiff's Motion to Conduct Deposition of Karen Morrow and for Expedited Hearing (Dkt. # 36) should be DENIED; and Defendant's Opposed Motion for Continuance (Dkt. # 41) should be **DENIED**.[1]

---

1. The Court held a telephone conference on Friday, October 24, 2003, to discuss Plaintiff's Motion to Conduct Deposition of Karen Morrow and for Expedited Hearing and Defendant's Opposed Motion for Continuance. During the conference, Plaintiff waived the Motion to Conduct Deposition. Accordingly,

## FACTUAL AND PROCEDURAL BACKGROUND

This is an action brought by Plaintiff Charlene H. Salge concerning alleged violations of the Age Discrimination in Employment Act, 29 U.S.C. § 626, *et seq.* ("ADEA") and the First Amendment to the United States Constitution via 42 U.S.C. § 1983. Salge was employed by the Edna Independent School District ("EISD") for 33 years. At the time of her discharge, Salge was 66 years of age and worked as the high school's secretary. At all relevant times, Bob Wells was Superintendent of EISD, and Kenneth Airheart was the high school principal. Airheart was also Salge's direct supervisor.

On February 11, 2002, Wells met with Airheart to discuss his annual evaluation and informed Airheart that he was going to recommend non-extension of his current contract to EISD board members. Airheart resigned on February 12, 2002. The local newspaper, the *Jackson County Herald–Tribune,* reported on February 20, 2002, that Airheart was retiring. At some time between February 20, 2002, and March 27, 2002, a reporter for the newspaper, Cynthia Roberson, called the high school for information and spoke to Salge. The contents of the conversation are disputed. On March 27, 2002, the newspaper published another article, this time stating that Airheart's contract was not being "renewed." Airheart and EISD Board members read the article and expressed concern and frustration to Wells because they believed erroneous, confidential personnel information had been released to the media. Wells contacted Roberson, and Roberson told Wells she received the information regarding Airheart's contract status from Salge. The newspaper ran a correction on April 2, 2003, clarifying that Airheart's contract was not "extended." The story indicated that Airheart could have elected to stay in his current position, but chose to resign.[2]

On May 31, 2002, Wells informed Salge that she was being discharged. Salge filed this action on September 10, 2002, alleging her termination violated her free speech rights and constituted age discrimination. EISD denies that it violated her free speech rights or discriminated against Salge. Salge filed a motion for partial summary judgment on her First Amendment claim on May 9, 2003. EISD responded on May 29, 2003, and filed a cross-motion for summary judgment on the same issue. On September 19, 2003, EISD filed a motion for summary judgment on Salge's age discrimination claim. The Court now considers these motions.[3]

the motion to Conduct Deposition and Defendant's Motion for Continuance are denied as moot.

2. The choice in terminology is important. In EISD's contract system, non-renewal of a contract is the same as termination. Non-extension is similar to a one-year probationary period, and the ultimate decision regarding renewal is made at the end of the original contract term.

3. Although Salge did not allege the issue in her complaint, both parties have briefed whether EISD's policy governing employee communication with the press is unconstitutional "on its face." Salge argues that EISD has a blanket policy prohibiting an employee from speaking to the media. EISD insists that the policy allows the superintendent to make all official comments to the media regarding personnel issues. Other speech, such as a coach commenting on a sporting event, could be acceptable. Importantly, the parties dispute the terms of the policy and fail to provide the Court with a written version of the policy. Therefore, the Court declines to decide whether EISD's policy governing communication with the media violates the First Amendment on its face.

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Christopher Village, LP v. Retsinas,* 190 F.3d 310, 314 (5th Cir. 1999). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment, there must be an absence of any genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is "material" if its resolution could affect the outcome of the action. *Daniels v. City of Arlington, Tex.,* 246 F.3d 500, 502 (5th Cir.2001), *cert. denied,* 534 U.S. 951, 122 S.Ct. 347, 151 L.Ed.2d 262 (2001).

The moving party bears the initial burden of informing the court of all evidence demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Only when the moving party has discharged this initial burden does the burden shift to the non-moving party to demonstrate that there is a genuine issue of material fact. *Id.* at 322, 106 S.Ct. 2548. If the moving party fails to meet this burden, then they are not entitled to a summary judgment and no defense to the motion is required. *Id.*

"For any matter on which the non-movant would bear the burden of proof at trial ..., the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Transamerica Ins. Co. v. Avenell,* 66 F.3d 715, 718–19 (5th Cir.

1995); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 323–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To prevent summary judgment, the non-movant must "respond by setting forth specific facts" that indicate a genuine issue of material fact. *Rushing v. Kansas City S. Ry. Co.,* 185 F.3d 496, 505 (5th Cir.1999).

When considering a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in favor of the non-movant. *See Yaquinto v. Segerstrom (In re Segerstrom),* 247 F.3d 218, 223 (5th Cir.2001); *see also Samuel v. Holmes,* 138 F.3d 173, 176 (5th Cir.1998). The court must review all of the evidence in the record, but make no credibility determinations or weigh any evidence, disregard all evidence favorable to the moving party that the jury is not required to believe, and give credence to the evidence favoring the nonmoving party as well as to the evidence supporting the moving party that is uncontradicted and unimpeached. *Moore v. Willis Indep. Sch. Dist.,* 233 F.3d 871, 874 (5th Cir.2000). However, the non-movant cannot avoid summary judgment simply by presenting "conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *See TIG Ins. Co. v. Sedgwick James of Wash.,* 276 F.3d 754, 759 (5th Cir.2002); *see also Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994) (en banc).

### II. Plaintiff's Objections to Evidence

Salge objects to EISD's Motion for Summary Judgment Motion and Response to the extent that (1) EISD failed to support the motion with proper summary judgment evidence and (2) EISD submitted its "own flawed rendition of the 'facts'" without specific citations to the

record.[4] As to Salge's first objection, EISD submitted three main exhibits with its Motion and Response.[5] One exhibit is an affidavit, and the remaining two exhibits consist of deposition testimony. Salge fails to specifically object to any one of these Exhibits as being improper. Therefore, the objection is too broad and should be overruled. Regarding EISD's rendition of the facts, EISD submitted a Reply in which it claims that throughout the Facts section of its Motion, EISD inadvertently forgot to cite Exhibit A, the Affidavit of Bob Wells.[6] EISD added further that after each sentence in the Facts section, Exhibit A should have been cited. The Court finds that EISD has corrected the error in its pleading. Accordingly, the objection is overruled.

### III. Plaintiff's First Amendment Retaliation Claim

It is well established that the government may not constitutionally compel persons to relinquish their First Amendment rights as a condition of public employment. *Harris v. Victoria Independent School District*, 168 F.3d 216, 220 (5th Cir.1999) *(citing Keyishian v. Board of Regents of the Univ. of the State of N.Y.*, 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629, (1967))*. To prevail on a First Amendment retaliation claim, a plaintiff must satisfy four elements: (1) plaintiff suffered an adverse employment decision, (2) plaintiff's speech must involve a matter of public concern, (3) plaintiff's interest in commenting on matters of public concern must outweigh the Defendant's interest in promoting efficiency, and (4) plaintiff's speech must have motivated the Defendant's ac-

tion. *Harris*, 168 F.3d at 220. *See also Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir.1997); *Thompson v. City of Starkville*, 901 F.2d 456, 460 (5th Cir.1990); *Connick v. Myers*, 461 U.S. 138, 147, 103 S.Ct. 1684, 75 L.Ed.2d 708, (1983); *Pickering v. Board of Education*, 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); *Mt. Healthy City School Dist. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). The parties do not dispute that Salge satisfied the first and last elements of her prima facie case.[7] EISD argues, however, that Salge cannot prove that (1) her speech was on a matter of public concern and that (2) her interest in commenting on matters of public concern outweigh EISD's interest in promoting efficiency. EISD insists further that before analyzing the second and third prongs of Salge's prima facie case, the Court must determine which speech to analyze. Specifically, EISD contends the Court must choose between "Salge's *post hoc* allegations of what was actually said, or Wells' reasonable belief in May 2002 as to what was said." [8]

### A. The speech the Court considers in the First Amendment analysis

The parties dispute what Salge said in her telephone conversation with Roberson. Salge insists that she used the word "extended" to describe Airheart's contractual status to Roberson. EISD argues that Wells, through his reasonable belief, is convinced that Salge used the word "renewed." Roberson's position on what Salge said to her during their conversation is indiscernible. Roberson testified that it was a mistake that the term "non-renewed" appeared in the article,[9] but also

---

4. *See* Dkt. # 22, pg. 2–3.

5. *See* Dkt. # 19, Exhibits A—C.

6. *See* Dkt. # 27, pg. 1–2.

7. EISD also does not dispute that EISD is subject to § 1983 liability through Superintendent Wells's actions.

8. *See* Dkt. # 19, pg. 8.

9. *See* Dkt. # 17, Exhibit 5, pg. 10.

testified that she could not remember what Salge actually said to her during their conversation.[10]

EISD urges the Court to use Wells's allegedly reasonable belief as to what terminology Salge used in her conversation. For support, EISD relies on *Waters v. Churchill.* In *Waters,* there was a dispute over what the plaintiff said to a co-worker during a dinner break. *Waters v. Churchill,* 511 U.S. 661, 664, 114 S.Ct. 1878 (1994). One version, which would have been unprotected speech, described the plaintiff's comments as personal criticism of her supervisor. *Waters,* 511 U.S. at 665–66, 114 S.Ct. 1878. The plaintiff's version, which would have been protected speech, described her comments as criticizing an employee cross-training policy. *Id.* The employer read reports from employees who overheard the conversation, interviewed the employee the plaintiff conversed with, and questioned the plaintiff directly. *Id.* at 680, 114 S.Ct. 1878. In its analysis, the Court addressed the following issue: when a factual dispute exists as to what an employee actually said, should the Court apply the *Connick* test to the speech as the government employer found it to be, or should it ask the jury to determine the facts for itself? *Id.* at 668, 114 S.Ct. 1878. Justice O'Conner, writing the plurality opinion, reasoned that an employer may not avoid liability under the First Amendment if the employer did not hold a reasonable, good faith belief as to what the employee said. *Id.* at 677–78, 114 S.Ct. 1878.

■ EISD's reliance on *Waters* is misplaced. First, no case law exists to indicate that the Fifth Circuit has elected to follow the plurality opinion in *Waters.* In addition, it is not clear that Wells held a reasonable, good faith belief that Salge used the term "renewed." Contrary to EISD's implied assertion that the *Waters* test is subjective,[11] the Court clearly articulated an objective standard in *Waters.* Importantly, Wells did not question Roberson or Salge regarding the contents of their conversation or the specific terminology Salge used.[12] Indeed, there is no evidence that Wells gathered any information concerning the conversation or sought opinions from other employees as to the trustworthiness of Roberson or Salge. In spite of the lack of any indication that an investigation was conducted, EISD insists that Wells held a reasonable, good faith belief. Wells "assumed the word 'renewed' must have come from a school employee, because it is a term of art," and Roberson's conversation with Wells confirmed this assumption.[13] The Court is not convinced that this evidence alone qualifies Wells's belief as reasonable. Further, even if Wells did hold a reasonable belief, that belief, without any other evidence, is insufficient to establish that Salge's speech was not on a matter of public concern.

■ Finally, EISD admits that whether Salge actually used the word "extended" or "renewed" is an "immaterial red herring," because Wells would have fired her for using either term.[14] EISD, however, fails to articulate a reason why Wells's belief would make a difference in the First Amendment analysis. In *Waters,* the versions of the stories differed to the extent that one would be protected speech and one would not. Assuming arguendo that EISD's version of what Salge allegedly said is the acceptable version for the Court

10. See Dkt. # 17, Exhibit 5, pg.14–15.

11. *See* Dkt. # 19, pg. 9–10. EISD advocates that it is undisputed that Wells's belief was "eminently reasonable" and honest.

12. *See* Dkt. # 19, Exhibit B, pg. 16.

13. *See* Dkt. # 19, pg. 10.

14. Dkt. # 19, pg. 9.

to use in its analysis, EISD's version of Salge's speech does not change the content of her message such that one version would be protected and the other would not. Salge's basic point was that Airheart was not voluntarily resigning and retiring. Instead, Airheart expressed to co-workers that "he did not want to stay where he was not wanted," whether expressed through the administration's non-extension or non-renewal of his contract, and this lead to his resignation.[15] EISD argues that if Salge used the term "renewed," then her speech was "false," and therefore, unprotected. This argument is also unpersuasive. Speech, even if false, can enjoy First Amendment protection if the speaker did not make the statements with knowledge of their falsity or with reckless disregard for the truth. *See N.Y. Times v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964).

### B. Whether Salge's speech was on a matter of public concern

■■■■ Whether speech is protected by the First Amendment is a question of law to be determined by the Court. *Dodds v. Childers*, 933 F.2d 271, 273 (5th Cir.1991). In order for speech by a public employee to enjoy constitutional protection, the speech must involve a matter of public concern. *Harris*, 168 F.3d at 221. (*Quoting Denton v. Morgan*, 136 F.3d 1038, 1042 (5th Cir.1998)). To rise to the level of public concern, a Plaintiff must speak primarily in her role as citizen rather than as an employee addressing matters only of personal concern. *Id.* Courts must look to the content, form, and context of the speech, as revealed by the whole record, in determining whether a Plaintiff's speech addresses a matter of public concern. *Id.* Another factor Courts consider in this in-

quiry is whether a Plaintiff's comments were made against a backdrop of widespread debate in the community. *Id.* at 222. Finally, determining whether speech meets this threshold is a fact specific analysis. *Id.* at 221.

■■■■ Salge insists that her speech involved a matter of public concern because it is important for people in the community to know what is happening at school.[16] Specifically, Salge claims that after the February 20, 2002, story ran in the local newspaper regarding Airheart's resignation, citizens of the local community contacted Wells inquiring about Airheart's resignation, and even stopped Wells in the grocery store.[17] Salge argues further that information concerning Airheart's resignation was particularly important in light of the fact that the high school principal, the high school assistant principal, the high school counselor, and the junior high school counselor also resigned within close proximity to each other.[18]

The Fifth Circuit addressed a similar situation in *Harris v. Victoria Independent School District*. In *Harris*, the plaintiffs were elected as faculty representatives of the high school's site based decision making committee and were appointed to serve on another committee, both designed to improve the quality of the school. *Harris v. Victoria Independent School District*, 168 F.3d 216, 219 (5th Cir.1999). During a meeting with the superintendent to discuss the progress of a recently implemented improvement plan, the plaintiffs reported that many faculty members believed the high school needed a new principal to successfully execute the plan. *Harris*, 168 F.3d at 219. After the meeting, the superintendent reprimanded

---

**15.** *See* Dkt. # 17, Exhibit 18, pg. 3.

**16.** *See* Dkt. # 17, pg. 11, ¶ 39.

**17.** *See* Dkt. # 17, pg. 10, ¶ 36.

**18.** *See* Dkt. # 17, Exhibit 5, pg. 10–11.

both plaintiffs and transferred them to different campuses within the district. *Id.* The plaintiffs sued the school district claiming their transfers were in retaliation for their exercise of protected speech. *Id.* at 220. In the analysis, the Court emphasized that "when an employee speaks in response to an invitation and on a matter pertinent to that request, the context factor weighs in his favor." *Id.* at 222 (quoting *Victor v. McElveen*, 150 F.3d 451, 458 (5th Cir.1998)). The Court also noted that there was no evidence of a personal dispute between the plaintiffs and the principal or between the plaintiffs and their superintendent. *Id.* at 222. In addition, faculty members and parents called board members with concerns, stopped board members at the grocery store and church with concerns, and the local newspaper ran a story discussing the low performance rating the school recently received. *Id.* In reversing the district court's grant of summary judgment, the Fifth Circuit held that while the plaintiff's speech did not fit neatly into a factual scenario or category usually deemed protected, their speech did involve a matter of public concern. *Id.*

Here, unlike in *Harris*, Salge was not an elected representative of the faculty. EISD admits, however, that Salge held an important position within the school system. In its motion, EISD acknowledged that "as secretary of a high school in a small community, Salge was usually the first person that patrons encountered when visiting the high school, and therefore played a vital role in maintaining good communications between the school and the community." [19] By holding this important position, Salge's speech on an issue would be of interest to community members. Moreover, Salge's thirty-three years of experience in the school system could add additional importance to her comments because she is familiar with issues the school faced for the last three decades.

Further, like *Harris*, Salge was responding to an invitation to speak. In her affidavit, Salge describes her conversation with Roberson and states, "Ms. Roberson asked me why I felt the district and the high school could not keep good people, why people kept leaving." [20] Salge adds that she responded to the request by telling Roberson that Airheart was not going to stay where he was not wanted and that Wells was not going to extend Airheart's contract. [21] Therefore, the context factor weighs in Salge's favor.

There is also evidence that Salge's comments were made against a background of community debate. Newspapers articles were published reporting the resignations of EISD employees, citizens called the school regarding their resignations, and members of the community approached Wells in the grocery store for information regarding Airheart's employment status. [22] EISD argues that these occurrences are not evidence of community debate because after Salge spoke to the newspaper, the focus of the debate changed from Airheart's resignation to EISD terminating Airheart. The Court is not persuaded by this distinction. The topic of community debate was the employment status of Airheart and other school administrators. Whether Airheart voluntarily resigned or felt compelled to leave the school could be interwoven at any time within the broader community debate. For these reasons, the Court holds that Salge's speech was on a matter of public concern.

---

**19.** Dkt. # 19, pg. 2.

**20.** Dkt. # 17, Exhibit 18, pg. 2–3.

**21.** Dkt. # 17, Exhibit 18, pg. 3.

**22.** *See* Dkt # 17, Exhibit 6, pg. 73–74.

## C. The *Pickering* balance

 The Court now considers whether Salge's interest in free speech outweighs "the interest of the state, as an employer, in promoting the efficiency of the public services it performs through its employees" *Harris,* 168 F.3d at 223. In striking this balance, the Court should examine the following factors: (1) whether the speech was likely to generate controversy and disruption, (2) impeded the school's general performance and operation, and (3) affected the working relationships necessary to the department's proper functioning. *Id.* However, "creating room for free speech in hierarchical organizations necessarily involves inconveniencing the employer to some degree. Speech concerning public affairs usually creates attendant inefficiencies in the running of the public entity" *Moore v. City of Kilgore, Tex.,* 877 F.2d 364, 375 (5th Cir.1989).

 EISD fails to present any evidence questioning whether Salge's speech impeded the school's general performance and operation. EISD argues, however, that Salge's speech created a disruption and affected working relationships at the high school. Specifically, Wells argues that after the March 27, 2002, newspaper article was published, Airheart, the Board members, and citizens were upset with Wells because (1) confidential information was published in the newspaper, and (2) the information published was false.[23] Wells insists further that he was inconvenienced because he spent valuable time correcting the erroneous publication.[24] These arguments are unpersuasive. As stated, it is natural for speech made against a backdrop of community debate to create some disruption. EISD fails to present the Court with any specific instances of disruptions that threatened the daily functioning of the school. Moreover, the working relationship between Airheart and Wells could have suffered some strain before the newspaper article was published due to Airheart's receipt of a low evaluation and his decision to resign. Again, EISD offers no specific evidence of Airheart's or board members' working relationship with Wells being affected to the extent that the school's daily operations were jeopardized. Finally, the Court notes that Wells's efforts to correct the erroneous publication took valuable time out of his working day, and thus contributed to inefficiencies in the school system. This slight inefficiency, however, is not sufficient to outweigh Salge's right to speak on a matter of public concern. Importantly, it is disputed whether the cause of the false information contained in the article was attributable to Salge or Roberson. Thus, the inefficiency might not have been a direct result of Salge's speech. For these reasons, the Court holds that EISD's interest in promoting efficiency does not outweigh Salge's First Amendment right to speak on a matter of public concern.

## IV. Salge's Age Discrimination Claim under the ADEA

### A. Salge's objections to evidence

 In her response to EISD's Motion for Summary Judgment on Salge's Age Discrimination Claim, Salge objects to the EISD relying on Wells's affidavit. Salge claims that this evidence is tainted because it is "self-serving" and "not readily controverted."[25] Affidavits are proper summary judgment evidence. Discovery has been conducted in this case, and Salge had ample opportunity to depose Wells and gather information from Wells through interrogatories, depositions, and

---

**23.** *See* Dkt. 19, Exhibit C, p. 74–75.

**24.** *See* Dkt. 19, pg. 18.

**25.** *See* Dkt. # 34, pg. 8.

other discovery tools for the purpose of controverting his testimony. Therefore, the objection is overruled.

## B. The ADEA standard

The familiar burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), generally governs a plaintiff's claims for unlawful discrimination. *See Rubinstein v. Admin. of Tulane Educ. Fund*, 218 F.3d 392, 399 (5th Cir. 2000). Under this framework: "the plaintiff bears the burden of establishing a prima facie case of discrimination; upon such a showing, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the challenged employment action; if such a showing is made, then the burden shifts back to the plaintiff to demonstrate that the articulated reason was merely a pretext to unlawful discrimination." *Id.* (citing *McDonnell Douglas Corp.*, 411 U.S. at 802–04, 93 S.Ct. 1817).

A prima facie case usually may be established by a showing that the plaintiff was a member of a protected class, that he was qualified for the position at issue, that he was subjected to an adverse employment decision; and that the adverse employment decision was differentially applied to him. *See id.* (citing *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)); *Ward v. Bechtel*, 102 F.3d 199, 202 (5th Cir.1997); *Stewart v. Houston Lighting & Power Co.*, 998 F.Supp. 746, 751 (S.D.Tex. 1998). However, a claim for age discrimination under the Age Discrimination in Employment Act ("ADEA") follows a mod-

ified framework. *See Brown v. Bunge Corp.*, 207 F.3d 776, 781 (5th Cir.2000). Though the first three elements of the prima facie case are identical to those articulated in *McDonnell Douglas*, the fourth "differential treatment" element requires a plaintiff to demonstrate that either: (1) he was replaced with someone outside the protected class; (2) he was replaced with someone younger; or (3) he was "otherwise discharged because of his age." *Id.*

After the employer articulates its reason for the challenged decision, the plaintiff may establish pretext either through evidence of discriminatory motive or by showing that the employer's proffered explanation is false or "unworthy of credence." *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir.2001). "Evidence demonstrating the falsity of the defendant's explanation, taken together with the prima facie case, is likely to support an inference of discrimination even without further evidence of a defendant's true motive." *Sandstad v. CB Richard Ellis*, 309 F.3d 893, 897 (5th Cir.2002) (citing *Reeves*, 530 U.S. at 147–148, 120 S.Ct. 2097); *see also Palasota v. Haggar Clothing Co.*, 342 F.3d 569, 576 (5th Cir.2003) (holding that "the establishment of a prima facie case and evidence casting doubt on the veracity of the employer's explanation is sufficient to find liability").[26] Thus, the plaintiff can survive summary judgment by producing evidence that creates a genuine factual issue as to the employer's discriminatory motive or the falsity of the employer's proffered legitimate nondiscriminatory reason for its decision.

---

**26.** The Fifth Circuit has cautioned that instances may exist, although rare, where a showing of pretext would not be sufficient to infer discrimination. *See Russell*, 235 F.3d at 223. Such an instance would occur "if the record conclusively revealed some other, nondiscriminatory reason for the employer's deci-

sion, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination occurred." *Id.* (citing *Reeves*, 120 S.Ct. at 2109).

## C. Legitimate non-discriminatory reason for Salge's termination

In its motion for summary judgment, EISD does not dispute that Salge satisfied her prima facie case of discrimination.[27] To satisfy its burden to provide a legitimate, non-discriminatory reason for Salge's termination, EISD insists that Salge was terminated because: (1) she violated EISD's policies by discussing confidential personnel matters with the local newspaper, and (2) she provided the newspaper with incorrect information.[28] EISD argues that Salge has no evidence, other than mere speculation, that the reasons for her termination were a pretext for age discrimination.[29]

## D. Whether EISD's reason is pretext for age discrimination

To survive summary judgment, Salge must raise an issue of fact regarding whether her termination was motivated by age. Specifically, Salge must present evidence tending to show that either: (1) EISD had a discriminatory motive or (2) EISD's offered reason for the termination is false, which, when taken together with her prima facie case, would permit a reasonable factfinder to conclude that EISD discriminated on the basis of age.

■ Salge argues that EISD had a discriminatory motive to terminate her because Wells made "very telling" age-related comments.[30] Specifically, Salge alleges that Wells stated the following: (1) at a district meeting discussing a remodeling program, Salge alleges Wells commented that "you have to get rid of the old and bring the new," (2) Wells stated there were "too many people at the top of the pay scale," and (3) Wells stated there were "too many historical markers in EISD". Salge offers no evidence that these comments were directed to her personally, that the comments were made in close proximity to Wells's decision to terminate her employment, or that they related to her termination. *See Krystek v. Univ. of S. Miss.*, 164 F.3d 251, 256 (5th Cir.1999); *Turner v. North American Rubber, Inc.*, 979 F.2d 55, 59 (5th Cir.1992) (explaining that comments made over a year before plaintiff's termination are merely "stray remarks," which are insufficient to establish discrimination); *Welch v. First Albany Corp.*, 1999 WL 1069525 (N.D.N.Y.1999) (describing the phrase "out with the old, in with the new" as a colloquial expression that does not constitute a basis for an age discrimination case). Therefore, the Court finds the Salge has not presented enough evidence of a discriminatory motive to establish that EISD's proffered reason for termination is pretextual.

Salge argues further that in the absence of discriminatory motive, she has presented sufficient evidence to question the credence of EISD's non-discriminatory reason. Specifically, Salge insists that (1) district policies were not applied equally among employees, (2) she did not reveal any confidential information to the paper, and (3) Wells initially cited Salge's poor performance for termination and later cited Salge's speech to the reporter for termination, a change which indicates pretext.[31] The Court finds these arguments unpersuasive.

As to her first argument, Salge insists that district policies were applied unequally among employees because EISD allegedly did not reprimand Wells for bringing alcohol onto school premises and for refer-

---

27. *See* Dkt. # 33, pg. 4.

28. *See* Dkt. # 33, Exhibit A.

29. *See* Dkt. # 33, pg. 5.

30. See Dkt. # 34, pg. 15, ¶ 58.

31. *See* Dkt. # 34, p. 12–13.

ring to two students as "bitches."[32] Salge, however, presents no evidence regarding a recent, similar situation where an employee younger than Salge spoke to the media on a similar matter and was not terminated. EISD's policies regarding alcohol and references to students are not relevant to whether EISD applied its policy regarding speaking to the media equally among employees. Therefore, Salge's argument regarding EISD's failure to reprimand Wells for violating two unrelated policies is insufficient to raise an issue of fact as to whether EISD's offered reason for the termination is pretextual.

Salge's remaining arguments are undermined by her admission throughout her pleadings that she was discharged because she spoke to a reporter. In fact, Salge cites in her Partial Motion for Summary Judgment as an "undisputed fact" that EISD "discharged Ms. Salge for talking with a newspaper reporter regarding Mr. Kenneth Airheart's contract not being extended."[33] Salge reiterates the same undisputed fact in her Response to EISD's Motion for Summary Judgment.[34] Salge cannot have it both ways. She cannot cite as an undisputed fact that she was terminated because she spoke to a reporter, and simultaneously argue that this reason is false as to her age discrimination claim. EISD's reason for termination if accepted as true establishes Salge's prima facie first amendment retaliation claim. The same reason, however, naturally precludes her separate, and mutually exclusive pretext arguments. For these reasons, the Court finds that Salge has failed to present the Court with more than a weak inference of fact as to whether the employer's reason for terminating her was false. Therefore, EISD's motion for summary judgment as

to Salge's age discrimination claim should be granted.

## CONCLUSION

For the foregoing reasons, the Court is of the opinion that Plaintiff's Partial Motion for Summary Judgment (Dkt. # 17) should be **GRANTED**; Defendant's Motion for Partial Summary Judgment (Dkt. # 19) should be **DENIED**; Plaintiff's Objections to Defendant's Summary Judgment Evidence (Dkt. # 22 and Dkt. # 34) should be **OVERRULED**; Defendant's Motion for Partial Summary Judgment on Age Discrimination Claim (Dkt. # 33) should be **GRANTED**; Plaintiff's Motion to Conduct Deposition of Karen Morrow and for Expedited Hearing (Dkt. # 36) should be **DENIED** as moot; and Defendant's Opposed Motion for Continuance (Dkt. # 41) should be **DENIED** as moot.

It is so ORDERED.

---

**32.** *See* Dkt. # 34, p. 12.

**33.** *See* Dkt. # 17, pg. 3.

**34.** *See* Dkt. # 22, pg. 4.